**Fred J. JOSEPH, Securities Commissioner for the State of Colorado, Plaintiff–Appellant,**

v.

**EQUITY EDGE, LLC, Equity Edge Preferred Income Fund I, LLC, Equity Edge Companies, LLC, Equity Edge Communities, LLC, Equity Edge Communities Arizona, LLC, Equity Edge Private Holdings, LLC, Mark Lane, Christopher Brenner, Virginia Ryan, Equity Edge Wealth Advisors, LLC, Daniel Spiranac, Spiranac Corporation, Donald Lester, and Jasper 2000, Inc., Defendants–Appellees.**

No. 07CA0523.

Colorado Court of Appeals, Division I.

July 24, 2008.

574

John W. Suthers, Attorney General, Paul L. Vorndran, First Assistant Attorney General, Russell B. Klein, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellant.

Brownstein Hyatt Farber Schreck, P.C., John V. McDermott, Denver, Colorado; Holme Roberts & Owen LLP, Matthew J. Smith, Denver, Colorado, for Defendants–Appellees Equity Edge, LLC, Equity Edge Preferred Income Fund I, LLC, Equity Edge Companies, LLC, Equity Edge Communities, LLC, Equity Edge Communities Arizona, LLC, Equity Edge Private Holdings, LLC, Mark Lane, Christopher Brenner, and Virginia Ryan.

Hogan & Hartson LLP, Daniel F. Shea, Eric J. Moutz, Denver, Colorado, for Defendants–Appellees Equity Edge Wealth Advisors, LLC, Daniel Spiranac, Spiranac Corporation, Donald Lester, and Jasper 2000, Inc.

Opinion by Judge ROMÁN.

The Colorado Securities Commissioner (Commissioner) appeals the trial court's judgment dismissing his regulatory enforcement action against Equity Edge Companies, LLC and its subsidiaries (collectively, Equity Edge), and its officers and employees, for violations of the Colorado Securities Act (CSA), sections 11–51–101 to –908, C.R.S. 2007. We affirm in part, reverse in part, and remand for further proceedings.

## I. Background

In 2003, Equity Edge began selling Certificates of Debt to investors to raise capital for the purchase of mobile housing, which was later refurbished and resold. The Certificates represent loans made by the investors and document Equity Edge's promise to repay the loans with interest.

In 2005, the Commissioner notified Equity Edge of perceived violations of the CSA and urged it to offer rescission to each investor, which it did. The rescission offers explained that Equity Edge may have failed to disclose certain information, and gave each investor an opportunity to rescind the Certificates. Three investors chose to rescind and were repaid by Equity Edge.

In 2006, the Commissioner brought this action alleging that Equity Edge had solicited more than $9 million from fifty-seven individual investors, and that those investors had not received a prospectus or other written disclosure as required under the CSA. The complaint also alleged that Equity Edge failed to disclose several material facts, including that the mobile homes were used, that the investment did not include the underlying real estate, and that the mobile homes were sold to high-risk and sub-prime borrowers. Additionally, the complaint asserted that Equity Edge was not financially capable of repaying the loans.

The Commissioner's specific claims for relief included that (1) Equity Edge failed to register the Certificates as securities pursuant to section 11–51–301, C.R.S.2007 (the registration claim); (2) Daniel Spiranac, Donald Lester, officers and employees of Equity Edge, and three limited liability companies operated by these individuals (collectively, licensing defendants) were unlicensed investment advisors in violation of sections 11–51–401(1.5), 11–51–409.5, and 11–51–501(6), C.R.S.2007 (the licensing claim); and (3) Equity Edge committed securities fraud. The Commissioner sought imposition of a constructive trust, injunctive relief, disgorgement, and damages.

Prior to trial, the Commissioner was granted partial summary judgment on the registration claim, and Equity Edge was "permanently enjoined pursuant to [section] 11–51–602, C.R.S. [2007] from further violations of the [CSA]." Equity Edge filed a motion to

reconsider, and the trial court reserved ruling on the motion until completion of the trial.

Following the Commissioner's case-in-chief, Equity Edge moved for directed verdict pursuant to C.R.C.P. 41(b)(1). The trial court granted the motion, reversed its earlier partial summary judgment, and dismissed all claims against Equity Edge.

The court made extensive findings, including that (1) the Certificates were unregistered securities that were not exempt from registration, (2) the investors chose to purchase the Certificates with full knowledge of the material facts, (3) each investor was given a good faith offer to rescind, (4) the investors received timely periodic principal and interest payments, (5) Equity Edge had not defrauded the investors, (6) the investors did not suffer damages, and (7) no individual defendant was compensated for providing investment advice.

On appeal, the Commissioner contends that the trial court (1) erroneously denied his registration claim under section 11–51–301, and (2) misinterpreted the term "investment advisor" under the CSA.

## II. Registration Claim

■ We agree with the Commissioner, and Equity Edge conceded during oral arguments, that neither rescission nor lack of damages nullifies a registration violation under section 11–51–301. However, we reject Equity Edge's contention that the trial court denied the Commissioner's request for injunctive relief and relied on offer of rescission and lack of damages as appropriate factors in its decision. The trial court did not address the Commissioner's request for injunctive relief; nor did it refer to the statutory provision allowing for such relief when it dismissed the Commissioner's claims. We conclude the trial court erred when it dismissed the registration claim and reversed its earlier permanent injunction without analyzing the Commissioner's request for injunctive relief under either the common law standard or section 11–51–602, C.R.S.2007.

Initially, in the trial court, the Commissioner sought a constructive trust and disgorgement. We need not consider those remedies on appeal because they were based on a claim that Equity Edge fraudulently obtained the investors' money. The Commissioner does not appeal, however, the trial court's finding that the investors were not defrauded. Likewise, the Commissioner does not dispute the trial court's finding that the investors did not suffer damages. Therefore, we consider only the Commissioner's request for permanent injunction.

■■ We employ standard rules of statutory construction in examining the CSA, and first look to the statute's plain language. In construing the CSA, we give full effect to the intent of the General Assembly. *Rosenthal v. Dean Witter Reynolds, Inc.,* 908 P.2d 1095, 1100 (Colo.1995); *People v. Prendergast,* 87 P.3d 175, 179 (Colo.App.2003).

Under the plain language of section 11–51–602, the Commissioner "may apply ... to temporarily restrain or preliminarily or permanently enjoin the act or practice in question and to enforce compliance with this article or any rule or order under this article." The Commissioner's application for injunction is appropriate when a person "has engaged in or is about to engage in any practice constituting a violation of any provision of this article." § 11–51–602(1), C.R.S.2007; *see Joseph v. Viatica Mgmt., LLC,* 55 P.3d 264, 268 (Colo.App.2002)(the CSA's "plain language permits the commissioner to obtain a permanent injunction based on past, and not just threatened future, violations of the Act").

The criteria for obtaining a permanent injunction are those set forth in *Rathke v. MacFarlane,* 648 P.2d 648 (Colo.1982), for a preliminary injunction, "except that the applicant must show actual success on the merits rather than merely a reasonable probability of success, and preservation of the status quo pending trial would no longer be relevant." *Rocky Mountain Animal Defense v. Colorado Div. of Wildlife,* 100 P.3d 508, 518 (Colo.App.2004). Thus, a successful application for permanent injunction must demonstrate (1) that a danger of real, immediate, and irreparable injury exists, (2) that a plain, speedy, and adequate remedy at law is lacking, (3) that the injunction would not disserve

the public interest, and (4) that the public interest favors the injunction. *Id.* at 518–19.

■ However, we agree with the Commissioner that, like the court's limited discretion under the Pet Animal Care and Facilities Act, sections 35–80–101 to –117, C.R.S.2007, reviewed in *Kourlis v. District Court,* 930 P.2d 1329, 1335 (Colo.1997), the district court's discretion in reviewing a claim for injunctive relief under the CSA is narrower than that permitted by C.R.C.P. 65 and the related common law test for injunctive relief. Specifically, the Commissioner "shall not be required to plead or prove irreparable injury or the inadequacy of the remedy at law." § 11–51–602(1); *see Feigin v. Digital Interactive Assocs., Inc.,* 987 P.2d 876, 883 (Colo. App.1999) (securities "commissioner is not required to allege or prove irreparable harm, or exigent circumstances, when applying for a [temporary restraining order] and, therefore, need not comply with C.R.C.P. 65(b)(1)"); *see also Kourlis,* 930 P.2d at 1335 (statutory injunction procedures supersede general rules of civil procedure where "injunction provision [is] an essential feature of the enforcement design").

■ Therefore, the test for permanent injunctive relief under the CSA requires (1) that a past or threatened future violation of the CSA exists, (2) that the injunction would not disserve the public interest, and (3) that the public interest favors the injunction. *See* § 11–51–602(1); *Kourlis,* 930 P.2d at 1335; *Rocky Mountain Animal Defense,* 100 P.3d at 518–19; *Joseph,* 55 P.3d at 268.

Here, the trial court found that Equity Edge failed to register the Certificates as securities in violation of section 11–51–301. Therefore, part one of the injunctive relief test—a past violation of the CSA—has been established.

However, the trial court erred when it did not make findings as to the remaining factors, namely whether the injunction would not disserve the public interest and whether the public interest favors the injunction. We therefore remand for the trial court to make findings on this issue and to rule, accordingly, as to whether injunctive relief should be granted.

## III. Licensing Claim

The Commissioner further contends that the district court erred in finding that the licensing defendants did not violate provisions of the CSA applicable to "investment advisers." We disagree.

### A. Standard of Review

■ This issue involves mixed questions of law and fact. Determining what the relevant CSA provisions require is a legal question. Whether the provisions applied to the licensing defendants, and whether the licensing defendants complied with them, are factual questions. *Sheridan Redevelopment Agency v. Knightsbridge Land Co.,* 166 P.3d 259, 262 (Colo.App.2007). When reviewing a mixed question of fact and law, we defer to the trial court's credibility determinations and will disturb its findings of historical fact only if they are clearly erroneous and not supported by the record, while the court's application of the governing statutory standards is reviewed de novo. *Martin v. Union Pacific R.R. Co.,* 186 P.3d 61, 69 (Colo.App.2007).

### B. "Investment Advisers"

■ In the licensing claim, the Commissioner sought judgment against the licensing defendants for failure to comply with regulations under the CSA pertaining to "investment advisers," pursuant to sections 11–51–401(1.5), 11–51–409.5, and 11–51–501(6), which require "investment advisers" to be licensed, to provide mandatory disclosures to clients, and to obtain their written consent.

The district court found that the licensing defendants (1) did not act as investment advisers or investment adviser representatives, (2) received no compensation for providing investment advisory services, (3) did not hold themselves out to the public or the investors as providing investment advisory services for compensation, and (4) received fees that were distributions or payments of management fees from various Equity Edge entities.

The Commissioner contends that the district court erred in interpreting the requirements for qualification as an "investment adviser" under the CSA because it found that

the compensation was in the form of "management fees" rather than "investment advisory services fees." The Commissioner contends that this interpretation puts form over substance because it relies on how the compensation is labeled by the defendants.

We disagree with the Commissioner and hold that the district court properly interpreted the definition of "investment adviser" in section 11–51–201(9.5)(a)(I), C.R.S.2007, and applied it to the facts of this case.

Sections 11–51–401(1.5), 11–51–409.5, and 11–51–501(6) of the CSA require "investment advisers" to be licensed, to provide mandatory disclosures to clients, and to obtain clients' written consent. The plain language of these provisions requires, as an initial matter, a determination that the licensing defendants were in fact, "investment advisers." Section 11–51–201(9.5)(a)(I) defines an "investment adviser" as "any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities."

■ According to the Commissioner, the district court applied a narrow reading of section 11–51–201(9.5)(a)(I) because it relied on how the compensation received by the licensing defendants was labeled. This argument, however, misconstrues the grounds for the district court's findings. Contrary to the Commissioner's contention, the district court did not find in favor of the licensing defendants because of the way it defined "compensation" under the CSA. Rather, it found that the licensing defendants simply did not engage in the business of advising others in exchange for compensation. This finding required credibility determinations by the district court based on the testimony provided by the licensing defendants and the clients regarding the nature of the services provided. We therefore review the district court's factual findings under a clear error standard, *Alexander v. McClellan,* 56 P.3d 102 (Colo. App.2002), and perceive no error in its determination that the licensing defendants did

not act as "investment advisers" as defined by the CSA.

The evidence presented to the district court on this issue constituted ample support for its findings, including: (1) none of the investors or clients were charged any fees for investment advice; (2) none of the investors were charged any fees against the principal of their Certificates or their interest payments; (3) the licensing defendants testified that all payments received by them related to their management and administrative services; (4) the testimony of the licensing defendants was corroborated by the chief financial officer and general counsel of Equity Edge; and (5) one of the licensing defendants was informed by two auditors from the Colorado Division of Securities that he did not need to be licensed as an investment adviser.

These findings differ from those cases in which courts have found the defendants to have acted as an investment adviser. *See S.E.C. v. Washington Inv. Network,* 475 F.3d 392 (D.C.Cir.2007) (firm advised others "as to the advisability of investing in, purchasing, or selling securities," within the meaning of 15 U.S.C. § 80b–2(a)(11), and thus was investment adviser under Investment Advisers Act, where services provided by firm to its clients included advising them in choosing among different investment managers, who had distinct investment styles, and advising them with respect to asset allocation); *S.E.C. v. Merrill Scott & Assocs., Ltd.,* 505 F.Supp.2d 1193 (D.Utah 2007) (defendant acted as an investment adviser within meaning of Investment Advisors Act because he frequently advised clients as to the value of securities and recommended investments, and he either wrote or helped to write most master financial plans for clients, which plans contained numerous recommendations regarding investment products); *S.E.C. v. Terry's Tips, Inc.,* 409 F.Supp.2d 526 (D.Vt.2006)(complaint sufficiently alleged that online financial adviser and its owner were investment advisers under Investment Advisers Act, given assertions that adviser and owner advised their subscribers individually, as to degree of risk associated with auto-trading strategies offered, and which of several strategies to

select in light of subscriber's investment objectives).

Based on the record before us, we conclude that the district court did not err in finding that the licensing defendants did not engage in acts constituting investment advice and, therefore, were not subject to the provisions of the CSA regulating investment advisers.

The judgment is affirmed as to the licensing claim and reversed as to the registration claim, and the case is remanded for further proceedings consistent with this opinion.

Judge HAWTHORNE and Judge TERRY concur.