2012 COA 82

**RADCLIFF PROPERTIES LIMITED PARTNERSHIP, LLLP, a Colorado limited liability limited partnership; Radcliff Southeast Properties Limited Partnership, LLLP, Colorado limited liability limited partnership; Hornet Enterprises Limited Partnership, LLLP, a Colorado limited liability limited partnership; and 2150 Radcliff Limited Partnership, LLLP, a Colorado limited liability limited partnership, Plaintiffs–Appellants and Cross–Appellees,**

v.

**CITY OF SHERIDAN, Colorado, a Colorado home rule municipality; and City Council of the City of Sheridan, Colorado, Defendants–Appellees and Cross–Appellants.**

No. 11CA0462.

Colorado Court of Appeals, Div. V.

May 10, 2012.

Norton, Smith & Keane, PC, J. Michael Keane, Charles E. Norton, Denver, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Williamson & Hayashi, LLC, William P. Hayashi, David S. Williamson, Mary Lynn Benham, Boulder, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge GRAHAM.

¶ 1 Radcliff Properties Limited Partnership, LLLP, Radcliff Southeast Properties Limited Partnership, LLLP, Hornet Enterprises Limited Partnership, LLLP, and 2150 Radcliff Limited Partnership, LLLP (plaintiffs), appeal the district court's order denying their petition for disconnection from the City of Sheridan, Colorado, (Sheridan). Sheridan and its City Council (defendants) cross-appeal certain aspects of the order. We affirm.

## I. Background

¶ 2 Plaintiffs own eight parcels of property located within Sheridan, a Colorado home rule municipality. Plaintiffs utilize some of the properties as a vehicle recycling center and lease the remaining properties to tenants. The properties were annexed into Sheridan in 1977, and Radcliff Street (Radcliff) provides the only access to the properties.

¶ 3 On July 6, 2010, plaintiffs filed a petition seeking to disconnect certain of their properties from Sheridan pursuant to section 31–12–119, C.R.S.2011. That statute permits qualifying landowners to disconnect their property from a municipality when the municipality has failed to provide certain essential services. Defendants filed an answer to the petition on August 9, 2010, arguing that plaintiffs did not qualify for disconnection because they failed to meet the statutory requirements, and moved to dismiss the petition.

¶ 4 The district court granted the motion in part, ruling that the original petition was insufficient because it omitted additional elements listed in section 31–12–602, C.R.S.2011 (prescribing the content of the petition). Plaintiffs then filed an amended petition including the additional elements. Defendants filed an amended answer raising the same defense as above and also raising the affirmative defense that plaintiffs' petition was barred by the applicable statute of limitations.

¶ 5 A trial to the court was held on October 28, 2010, and January 11 and 13, 2011. At the close of plaintiffs' evidence, defen-

dants moved to dismiss the petition pursuant to C.R.C.P. 41(b)(1) on the ground that plaintiffs had failed to satisfy the demand requirement in section 31–12–119. The district court denied the motion, holding that a letter plaintiffs sent to defendants in 1994 was sufficient to meet the demand requirement.

¶ 6 In its final order dated January 20, 2011, the district court denied plaintiffs' petition, holding that (1) plaintiffs failed to meet the contiguity requirements of the disconnection statute because 8.4% contiguity between their property and Sheridan was not enough; (2) disconnection was inappropriate because "certain other parcels would be isolated if disconnection is allowed[,] leaving an island of land located in Sheridan with no access to any services"; (3) plaintiffs failed to meet the demand requirements of the disconnection statute because the meeting with defendants on "September 2, 2009 was not sufficient notice to Sheridan"[1]; and (4) disconnection was inappropriate because "Sheridan has provided the same municipal services on the same general terms and conditions as the rest of the municipality receives." Additionally, in a separate order entered on February 25, 2011, the court granted defendants' bill of costs, which consisted of a fee for an expert witness who testified on defendants' behalf.

¶ 7 On appeal, plaintiffs contend that the district court erred by (1) holding that 8.4% was "insufficient contiguity" to qualify for disconnection; (2) "holding that if disconnection took place certain other parcels would be isolated[,] 'leaving an island of land located in Sheridan with no access to any services'"; (3) holding that plaintiffs "had not given sufficient notice of their demand for services to qualify for disconnection"; (4) holding that "Sheridan has provided the same municipal services on the same general terms and conditions as the rest of the municipality receives"; (5) holding that a petition to disconnect filed pursuant to section 31–12–119 must

contain the same statutory elements as a petition to disconnect from a statutory city filed pursuant to section 31–12–601, C.R.S. 2011; and (6) making "numerous factual findings that are contradicted by uncontested evidence on the record or not supported by competent evidence, and in refusing certain photographs offered into evidence."[2]

¶ 8 On cross-appeal, defendants argue that (1) the 1994 letter, filed "16 years before the filing of the Petition to Disconnect" is not adequate to meet the demand requirements; (2) "an action for disconnection from a municipality ... [is] barred by the statute of limitations when the proceedings are filed 16 years after the jurisdiction demand ... is given"; and (3) "the Petition to Disconnect [is] precluded by Section 31–12–603(1), C.R.S. [2011]."

## II. Petition to Disconnect

### A. Standard of Review

¶ 9 When reviewing a mixed question of fact and law, we defer to the trial court's credibility determinations and will disturb its findings of historical fact only if they are clearly erroneous and not supported by the record, and we review the court's application of the governing statutory standards de novo. *Joseph v. Equity Edge, LLC*, 192 P.3d 573, 577 (Colo.App.2008).

### B. Analysis

#### 1. Applicability of Sections 31–12–601 to –603

¶ 10 We first reject plaintiffs' argument that the trial court erred by requiring a petition to disconnect filed under section 31–12–119 to contain all of the statutory elements required in a similar petition filed under section 31–12–601. Additionally, we also reject defendants' argument on cross-appeal that plaintiffs' petition to disconnect is precluded by section 31–12–603(1).

---

1. The court never addressed the fact that the final order contradicted its previous holding that the 1994 letter was sufficient demand.

2. In their notice of appeal, plaintiffs argued that the trial court erred by "awarding witness fees as costs to defendants and in determining that the expert's testimony was 'necessary' to their case."

Plaintiffs listed the issue under their "Issues Presented for Review" section of their opening brief but did not argue the issue any further. In their answer-reply brief, plaintiffs conceded that it is not being appealed as the award of costs would be reversed if we reverse the trial court's order. We therefore do not address this issue.

¶ 11 Section 31–12–119 specifically states that a petition for disconnection must follow the *procedure* "set forth in parts 6 [specifically section 31–12–602] and 7 of this article, insofar as *consistent* with *this section*." § 31–12–119 (emphasis added).[3] Plaintiffs argue that part 6 does not apply to their petition to disconnect filed under section 31–12–119 because Sheridan is a home rule municipality and part 6 applies to petitions to disconnect from a statutory city. Since the definition of city found in 31–1–101(2), C.R.S.2011, specifically excludes "any city or city and county which has chosen to adopt a home rule charter," plaintiffs contend that part 6 has no application. *See Allely v. City of Evans*, 124 P.3d 911, 913 (Colo.App.2005) (holding that section 31–12–601 does not apply to disconnection from home rule municipalities). We disagree.

¶ 12 While plaintiffs cite *Allely* in support of their argument, *Allely* is distinguishable. The petition to disconnect in *Allely* was filed against a home rule municipality purportedly under section 31–12–601. *Allely* affirmed dismissal of the petition because petitions to disconnect cannot be filed against home rule municipalities under part 6. That part permits petitions to be filed only against statutory cities, not home rule municipalities. Section 31–12–601 allows for petitions to disconnect territory from cities for any reason. In contrast, plaintiffs filed their petition under section 31–12–119. Section 31–12–119 permits qualifying landowners to disconnect their property from *a municipality*, which includes home rule municipalities, *see* § 31–1–101(6), C.R.S.2011, only where the municipality has *failed to provide certain essential services*. However, it adopts the procedure to govern such petition as set forth in part 6, section 31–12–602.

¶ 13 Thus, while section 31–1–601 applies to petitions to disconnect from cities, section 31–12–119 applies to petitions to disconnect from municipalities and those petitions must follow the procedures "set forth in part[ ] 6 [section 31–12–602]." Therefore, the trial court did not err by requiring that plaintiffs' petition contain all of the statutory elements required in a petition filed under section 31–12–601 because those procedural elements are incorporated by reference in section 31–12–119.

■ ¶ 14 On cross-appeal, defendants argue that plaintiffs' petition is precluded by section 31–12–603(1). We disagree.

¶ 15 Section 31–12–603(1) precludes a petition to disconnect "[w]hen a city has maintained streets, lights, and other public utilities for a period of three years through or adjoining said tracts of land." However, this is a substantive bar to filing a petition, whereas a petition filed under section 31–12–119 only has to follow the procedures "set forth in parts 6 and 7," not the substantive provisions of parts 6 and 7. Therefore, we conclude that plaintiffs' petition to disconnect is not precluded by section 31–12–603(1).

## 2. Section 31–12–119

■ ¶ 16 Plaintiffs argue that the trial court erred by denying their petition to disconnect for failure to meet the statutory requirements of section 31–12–119. We disagree.

¶ 17 Section 31–12–119 states:

The landowners of any tract or contiguous tracts of land aggregating five acres or more located on a boundary of the municipality at the time of the disconnection action may, three or more years after annexation, petition for disconnection from the municipality if such municipality does not, upon demand, provide the same municipal services on the same general terms and conditions as the rest of the municipality receives. The procedure for such disconnection shall be as set forth in parts 6 and 7 of this article, insofar as consistent with this section. To the extent that such parts are inconsistent with this section, the provisions of this section shall prevail when the action is based on failure of the municipality to serve an annexed area.

¶ 18 There is record support for the trial court's findings of historical fact, and there-

---

3. We note that the procedural requirements of part 6 and part 7 are substantially similar. *Com-* *pare* § 31–12–602 *with* § 31–12–703, C.R.S.2011.

fore we will not disturb the court's denial of plaintiffs' petition. *Joseph*, 192 P.3d at 577. The record supports the court's denial of plaintiffs' petition because plaintiffs failed to show that Sheridan "does not, upon demand, provide the same municipal services on the same general terms and conditions as the rest of the municipality receives." § 31–12–119. In light of our conclusion, we do not need to address plaintiffs' contiguity, demand, or isolation issues on appeal, nor do we reach defendants' demand or related statute of limitations issues on cross-appeal.

### 3. Services

¶ 19 The trial court found that all the witnesses were credible, and made a factual determination that "Sheridan has provided the same municipal services on the same general terms and conditions as the rest of the municipality receives." Specifically, the trial court held:

Sheridan provides fire, police, rescue, street maintenance and other municipal services to [plaintiffs'] properties. Sheridan provides maintenance and upkeep on Radcliff, but not to the extent that [plaintiffs] want. [Plaintiffs] want water and sewer service, but these services are not provided directly by Sheridan.

¶ 20 Plaintiffs argue that defendants provide sanitary sewer, domestic water, road maintenance, and storm water collection services to the rest of Sheridan on different terms than the services provided to plaintiffs' properties.

¶ 21 In regard to sanitary sewer services, plaintiffs argue that defendants provide such services to the rest of Sheridan through a contract with Englewood, but not to their properties. However, the record indicates that there are only two areas where defendants provide sewer services. One is near the business known as Red and Jerry's and is a "very, very small percentage of a collection system." A.J. Krieger, the City Manager of Sheridan, testified that, after reviewing the agreement between Sheridan and Red and Jerry's predecessor, Sheridan "probably [took ownership of the sanitary sewer main] as part of an economic development incentive." Sheridan also provides sewer services

for River Point, an urban renewal redevelopment, whose sewer system was initially constructed and paid for by the developer. At the time of trial, Sheridan had yet to acquire ownership of that sewer main.

¶ 22 Ultimately, Krieger testified that Sheridan does not provide sewer services to its residents and does not construct any sewer infrastructure. He also testified that it is the developer's or property owner's responsibility to construct such infrastructure and acquire the proper permit and agreement from the waste water facility, which plaintiffs have not done.

¶ 23 Plaintiffs point to the fact that there is a maintenance agreement between Sheridan and Englewood as evidence that Sheridan provides sewer services because Sheridan "retains the ultimate responsibility ... to maintain the sewer system that it owns." However, as discussed above, Sheridan only owns a very small part of the sewer infrastructure, and this ownership is through economic development agreements.

¶ 24 Plaintiffs also argue that defendants provide domestic water services to Sheridan through a contract with Denver Water, but not to their properties. Again, this argument is contrary to the record. Krieger testified that it is the "property owner's responsibility" to meet the requirements in order to tap into Denver Water's system. He also testified that Sheridan does not own or construct any water mains, other than through economic development agreements.

¶ 25 Plaintiffs further argue that defendants provide road maintenance and storm water collection services to the rest of Sheridan but not to their properties. Randy Mourning, the Public Works Director, testified that the current budget for street repairs is wholly inadequate to repair streets in Sheridan. Furthermore, he testified that only one street was improved recently with city funds because the street carried a high volume of traffic, .as opposed to Radcliff, which Krieger defined as a "low traffic volume street."

¶ 26 Additionally, Mourning testified that road sign repairs and street maintenance are done when complaints are made, every

street is plowed after every storm, and Radcliff is swept four times every year. While plaintiffs raised several issues with sign maintenance and snow removal on Radcliff, Mourning testified that, upon learning of such conditions, Sheridan repaired the signs and maintained Radcliff as needed.

¶ 27 Finally, in regard to storm water facilities, Krieger testified that Sheridan does not construct such facilities, and instead such construction is the responsibility of the property owner.

¶ 28 Therefore, the district court's conclusion that "Sheridan has provided the same municipal services on the same general terms and conditions as the rest of the municipality receives" is supported by the record. Thus, the court did not err in concluding that plaintiffs had failed to meet this statutory requirement and ultimately denying their petition.

### III. Factual Findings and Evidentiary Issues

¶ 29 Plaintiffs' next contention is that the district court erred by making certain findings of fact that were not supported by any competent evidence and by refusing to admit certain evidence that should have been received. We conclude that any such errors in the findings were harmless, and the court did not err as to the admission of evidence.

### A. Standard of Review

¶ 30 As noted previously, we will only reverse a trial court's findings of historical fact if they are "clearly erroneous and not supported by the record." *Joseph,* 192 P.3d at 577.

¶ 31 We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Scott v. Matlack, Inc.,* 39 P.3d 1160, 1170 (Colo.2002). A trial court does not abuse its discretion unless its decision is manifestly arbitrary, unreasonable, or unfair. *E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18, 23 (Colo.2000).

### B. Analysis

¶ 32 Plaintiffs' first contention is that the trial court made six factual findings that were not supported by the record: (1) that a

fire broke out in the early 1970s, when the fire actually happened in 1988; (2) that Radcliff is fifteen feet wide along its entire length, when it is actually twenty feet wide at parts; (3) that Ms. Corns, one of the owners of the properties, appeared not to know that one should call Xcel to request maintenance for street lights, when she actually always called Xcel but now understood that she should have called Sheridan; (4) that sanitary sewer and water service at River Point would never be serviced by Sheridan, when Krieger testified that Sheridan had agreed to accept one sewer main as part of the project; (5) that no loan could be obtained to fund the special improvement district (SID) until the engineering report is updated and a new bond election held, when both Corns and Krieger testified that the limits under article X, section 20 of the Colorado Constitution were successfully increased; and (6) that plaintiffs asked Sheridan to stop work on the SID project, when plaintiffs' counsel actually sent a letter explaining that plaintiffs did not feel the project could be financed during September 2010 and asked Sheridan to cease engineering work because there was no prospect of having bond proceeds and assessments in place to pay for those services.

¶ 33 After reviewing plaintiffs' six claims of trial court error, we conclude that any such errors are harmless. *See* C.A.R. 52(a); C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). The only claimed error that relates to whether defendants provide the "same municipal services," is the fourth claim regarding River Point's sewer and water mains. We have previously discussed this issue above and the record shows that it is the property owner's or developer's responsibility to pay for and install such infrastructure. River Point paid for and installed its own infrastructure while plaintiffs have not.

¶ 34 Thus, the issue of whether defendants service River Point's mains is not dispositive of whether defendants provide the "same municipal services on the same general terms and conditions," since plaintiffs have not complied with the "general terms and condi-

tions" that owners or developers pay for and install the infrastructure. Irrespective of the errors, the record supports the district court's conclusion that "Sheridan has provided the same municipal services on the same general terms and conditions as the rest of the municipality receives." Therefore, any perceived errors are harmless since they do not "affect the substantial rights of the parties." C.R.C.P. 61.

¶ 35 Plaintiffs' last contention is that the trial court erred by failing to admit over 100 photographs into evidence. Plaintiffs argue that the photographs, which depicted "curb and gutter and other municipal improvements in other places in Sheridan," were "relevant and material and should have been received." Defendants argue that the photographs were not relevant because, while "[t]hey do depict public works-types of improvements that are located around and throughout the city," they do not depict "municipally owned facilities." The trial court agreed with defendants and excluded the photos because they were not relevant in determining whether Sheridan "provided the same municipal services on the same general terms and conditions as the rest of the municipality receives."

¶ 36 CRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Unless otherwise provided by constitution, statute or rule, all relevant evidence is admissible. CRE 402. "A trial court has considerable discretion in ruling upon the admissibility of evidence" and "in determining whether evidence has logical relevance." *Smith v. Bd. of Educ.*, 83 P.3d 1157, 1165 (Colo.App.2003).

¶ 37 We conclude that the trial court did not commit error by refusing to admit the photographs. Plaintiffs made an offer of proof that the photos would "simply ... show[ ] the existence of other kinds of municipal improvements in other places in Sheridan." This offer of proof does not go to the issue of whether Sheridan owns such improvements. Therefore, without proving that Sheridan owns such improvements, the photographs themselves would not be relevant in determining whether Sheridan provides "the same municipal services on the same general terms and conditions as the rest of the municipality receives," which is the fact of consequence at issue. *See* CRE 401. Thus, the trial court did not err by refusing to admit the photographs.

¶ 38 In conclusion, the record supports the district court's denial of plaintiffs' petition to disconnect for failure to meet the statutory requirements of section 31–12–119, specifically that Sheridan does not "provide [plaintiffs] the same municipal services on the same general terms and conditions as the rest of the municipality receives." Therefore, we do not disturb its ruling.

¶ 39 The order is affirmed.

Judge CARPARELLI and Judge BOORAS concur.