2013 COA 87

**Barbara JORDAN, Plaintiff–Appellee,**

v.

**PANORAMA ORTHOPEDICS & SPINE CENTER, PC, Defendant–Appellant.**

No. 12CA0451

Colorado Court of Appeals, Div. VII.

June 6, 2013

Schatten Law Firm, Marc L. Schatten, Denver, Colorado; Susan Morath Horner, P.C., Susan Morath Horner, Boulder, Colorado, for Plaintiff–Appellee

Hall & Evans, L.L.C., Alan Epstein, Denver, Colorado; Ray Lego & Associates, Michael Adams, Greenwood Village, Colorado, for Defendant–Appellant

Opinion by JUDGE J. JONES

¶ 1 This is a premises liability case. Plaintiff, Barbara Jordan, tripped and fell on a common area sidewalk leading to the building in which defendant, Panorama Orthopedics & Spine Center, PC ("Panorama"), leased office space. She successfully sued Panorama under the Premises Liability Act (the Act), § 13–21–115, C.R.S.2012.

¶ 2 We must decide whether Panorama was a "landowner" within the meaning of the Act, and therefore could be held liable thereunder. We conclude that Panorama was not a landowner within the meaning of the Act because there was no evidence that it was in possession of the sidewalk or that it was responsible for creating a condition on the sidewalk or conducting an activity on the sidewalk that caused Ms. Jordan's injuries. Therefore, we reverse the district court's judgment against Panorama.

## I. Background

¶ 3 Panorama, a medical services provider, leased office space in an office building owned by another entity, as did three other tenants. Ms. Jordan went to Panorama for medical treatment. Following treatment, she left the building and began walking to her car, which was parked in the building's parking lot. While walking on a sidewalk leading to the parking lot, she tripped over a one-half-inch raised lip between concrete sections of the sidewalk. She fell and was injured.

¶ 4 Ms. Jordan filed suit against the property owner, the property manager, and Panorama, asserting claims for negligence and premises liability. Before trial, she settled her claims against the property owner and the property manager. Panorama then designated them as nonparties at fault. *See* § 13–21–111.5, C.R.S. 2012.

¶ 5 The district court granted Panorama's motion for summary judgment on the negli-

gence claim, but denied Panorama's motion for summary judgment on the premises liability claim.[1] The latter claim was tried to a jury.

¶ 6 When Ms. Jordan finished presenting her case, Panorama moved for a directed verdict, asserting that the evidence had failed to demonstrate that it was a landowner under the Act. The parties agreed that the court, rather than the jury, should determine if Panorama was a landowner under the Act. The court made findings on the record and concluded that Panorama was a landowner.

¶ 7 The jury returned a special verdict for noneconomic damages of $180,000, economic damages of $81,689, and permanent physical and mental impairment damages of $150,000. It apportioned thirty-percent of the fault to Panorama, sixty-percent to the property owner, and ten-percent to the property manager.

¶ 8 Panorama contends on appeal that the district court erred by (1) determining that it was a landowner under the Act; (2) improperly instructing the jury on nondelegation of a duty and awardable damages; and (3) erroneously admitting into evidence the indemnification clause in its lease. We agree with Panorama's first contention, and therefore need not address the others.

## II. Standard of Review

¶ 9 In the district court, both parties took the position that whether a party is a landowner within the meaning of the Act is a question of law for the court to decide. On appeal, Panorama maintains that view, but Ms. Jordan posits that on appeal the issue presents a mixed question of fact and law. She argues that we must defer to the district court's findings of historical fact—reviewing them only for clear error—but that we should review its ultimate conclusion of law—Panorama's status as a landowner under the Act—de novo. The Act itself is silent on this issue, though it does say that the court is to determine whether a plaintiff is a trespasser, licensee, or invitee under the Act. § 13–21–115(4). Neither the Colorado Supreme Court nor this court appears to have squarely ad-

---

1. Ms. Jordan has not appealed the district court's summary judgment on her negligence claim.

dressed the issue of the appropriate standard of appellate review.

■ ¶ 10 We conclude that the issue whether a party is a landowner under the Act presents a mixed question of fact and law.

■ ¶ 11 The Act applies only if the party sought to be held liable (or seeking to take refuge in the Act's liability limitations) is a "landowner," as defined therein. § 13–21–115(1), (2); *see Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1219 (Colo. 2002). Whether a party is a landowner is akin to the question whether a party owes a legal duty to a particular plaintiff, a question that has consistently been regarded as one of law, subject to de novo review. *See Vigil v. Franklin*, 103 P.3d 322, 325 (Colo.2004); *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 465 (Colo.2003); *Bath Excavating & Constr. Co. v. Wills*, 847 P.2d 1141, 1147 (Colo.1993). It is also akin to the question whether an entity is entitled to immunity, which our appellate courts have consistently regarded as one of law. *See, e.g., Air Wisconsin Airlines Corp. v. Hoeper*, 2012 CO 19, ¶ 20, 320 P.3d 830; *Health Grades, Inc. v. Boyer*, 2012 COA 196M, ¶ 25, —— P.3d ——, 2012 WL 5457419; *Churchill v. Univ. of Colo.*, 293 P.3d 16, 25 (Colo.App.2010), *aff'd*, 2012 CO 54, 285 P.3d 986; *Peper v. St. Mary's Hosp. & Med. Ctr.*, 207 P.3d 881, 888 (Colo.App.2008). And we do not see any qualitative distinction between the question whether a plaintiff is a trespasser, licensee, or invitee for purposes of the Act (which, as noted, the Act itself provides is a question to be resolved by the court), and the question whether a party is a landowner. Both questions involve determining whether a party fits within a statutory definition, and at least to that extent involve statutory interpretation. That type of inquiry is left to the court. *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo. 2005).

■ ¶ 12 We also recognize, however, that the determination whether a party fits within the statutory definition of a landowner may require the resolution of questions of historical fact. Colorado appellate courts have consistently regarded such factual determinations as reviewable only for clear error, even if the ultimate legal conclusion drawn from those facts is reviewable de novo. *People v. Pleshakov*, 2013 CO 18, ¶ 16, 298 P.3d 228; *Radcliff Props. Ltd. P'ship, LLLP v. City of Sheridan*, 2012 COA 82, ¶ 9, 296 P.3d 310; *Cerbo v. Protect Colo. Jobs, Inc.*, 240 P.3d 495, 500 (Colo. App.2010).

¶ 13 Therefore, in reviewing a district court's determination that a party is a landowner under the Act, an appellate court should review the court's findings of historical fact for clear error, deciding only whether there is any evidence in the record to support those findings. *People in Interest of A.J.L.*, 243 P.3d 244, 250 (Colo.2010); *Byerly v. Bank of Colo.*, 2013 COA 35, ¶ 32, —— P.3d ——, 2013 WL 979373; *Taxpayers for Pub. Educ. v. Douglas Cnty. Sch. Dist.*, 2013 COA 20, ¶ 34, —— P.3d ——, 2013 WL 791140. An appellate court should review the district court's ultimate legal conclusion that a party is a landowner de novo.

¶ 14 In this case, though the district court noted and relied on many historical facts in ruling that Panorama is a landowner, those facts are undisputed. Thus, we determine only whether those undisputed facts mean that Panorama is a landowner, and do so de novo. *Cf. Lakeview Assocs., Ltd. v. Maes*, 907 P.2d 580, 583–84 (Colo.1995) (reviewing de novo whether the plaintiff was a tenant, licensee, or invitee because the controlling facts were undisputed); *Wycoff v. Grace Cmty. Church*, 251 P.3d 1260, 1265 (Colo. App.2010) (reviewing de novo whether the defendant was a landowner under the Act because the relevant facts were undisputed).[2]

### III. Governing Law

¶ 15 The Act defines "landowner" as follows:

> For purposes of this section, "landowner" includes, without limitation, an authorized

---

**2.** The question of Panorama's status arose in the context of Panorama's motion for a directed verdict. We typically review a decision denying a motion for a directed verdict de novo. *Reigel v.*

*SavaSeniorCare L.L.C.*, 292 P.3d 977, 982 (Colo. App.2011); *Makoto USA, Inc. v. Russell*, 250 P.3d 625, 626 (Colo.App.2009).

agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property.

§ 13–21–115(1).

¶ 16 This definition is clearly broader than the term "landowner" might ordinarily suggest. A party need not hold title to the property to be considered a landowner within the meaning of the Act. *Pierson,* 48 P.3d at 1219; *Wycoff,* 251 P.3d at 1265–66. A tenant may, depending on the circumstances, be regarded as a landowner. *See Pierson,* 48 P.3d at 1219 n. 4; *Wycoff,* 251 P.3d at 1263, 1266 (entity which rented property to host an event was a landowner).

¶ 17 The supreme court has held that a party need not have exclusive possession of property to be considered "a person in possession of real property" under subsection 13–21–115(1). Rather, the party need only have a "sufficient" possessory interest in the property. *Pierson,* 48 P.3d at 1219–20.

¶ 18 Absent such a possessory interest, a party may be regarded as a landowner if it is "legally conducting activity or creating a condition on the property and therefore responsible for that activity or condition." *Id.* at 1220. The focus in this context is "whether the defendant is someone who is legally entitled to be on the real property and whether the defendant is responsible for creating a condition on real property or conducting an activity on real property *that injures an entrant.*" *Id.* at 1221 (emphasis added). This focus places "prospective liability with the person or entity that created the condition or conducted the activity on the real property *that, in turn, caused injury to someone.*" *Id.* (emphasis added). "[T]he cause of action must arise out of an injury occurring on the real property of another and by reason of the condition of the property or activities or circumstances directly related to the real property itself . . . ." *Id.*

### IV. Panorama's Motion for a Directed Verdict and the District Court's Ruling

¶ 19 In moving for a directed verdict, Panorama's counsel argued that there was no evidence that Panorama was responsible for creating a condition or conducting an activity on the sidewalk that caused Ms. Jordan's injuries. Counsel emphasized that the landlord was contractually responsible for maintaining the sidewalk.

¶ 20 In opposing Panorama's motion for a directed verdict, Ms. Jordan's counsel did not argue clearly that Panorama possessed the sidewalk or conducted activities on the sidewalk, or both. Counsel argued that Panorama was a landowner because (1) Ms. Jordan had fallen outside Panorama's front door; (2) the sidewalk was the only walkway persons parking in the building's handicapped spaces could use; (3) Panorama's actions showed it was concerned about potential liability if a patient fell on the sidewalk or in the parking lot; (4) Panorama prepared incident reports if it was aware of accidents on the building grounds; (5) it was in Panorama's interest to maintain safety on the sidewalk; (6) Panorama was in the best position to know if there was a hazard on the sidewalk (better than the property owner or property manager); (7) tenants paid the cost of maintaining the entirety of the real property on which the office building was located (though tenants did not perform maintenance work); (8) Panorama's lease contained an indemnification clause requiring it to indemnify the property owner from any liability "arising from Tenant's use of the Premises . . . or from any activity . . . by Tenant in or about the Premises"; and (9) in cases of emergency, Panorama had the right under the lease to remedy a hazard on the common areas of the building grounds.

¶ 21 The district court ruled that Panorama was a landowner based on the following: (1) Panorama had referred to the office building as the "Panorama campus"; (2) Panorama was a "major tenant"; (3) the emergency clause in the lease; and (4) the indemnification clause in the lease. The court found that the indemnification clause in particular was "strong evidence that Panorama had assumed the risk. . . ." And the court also said that Panorama was conducting an activity on the property because "[t]hey are

using—they are dispensing their medical prowess with reference to a variety of people needing their services...." The court did not appear, however, to rule that Panorama was in possession of the sidewalk.

## V. Additional Relevant Facts

¶ 22 The following undisputed facts also are relevant:

- Panorama did not have any ownership interest in any portion of the office building property.
- Panorama did not manage the building.
- Panorama's rights and obligations vis-à-vis the office building property were governed by a written lease. In relevant part, that lease provided:
  - Panorama leased only a specifically defined portion of the office building, referred to in the lease as "the Premises." The Premises were entirely within the office building.
  - Panorama was responsible for maintaining the Premises.
  - The Premises did not include the sidewalk on which Ms. Jordan fell or any portion of the parking lot. The sidewalk on which Ms. Jordan fell was within the "Common Areas" defined by the lease.
  - The lease provided that "Landlord shall keep the Common Areas in a neat, clean and orderly condition ...."
  - Panorama did not have any obligation to maintain the Common Areas. That responsibility was solely that of the landlord.
  - Panorama shared the cost of maintaining the Common Areas with the other tenants.
  - Panorama had the right to exclusive use of twenty-five parking spaces, and the right to nonexclusive use of other spaces in the building's parking lot. The landlord, however, maintained control and management over all parking spaces.
- There was no evidence that Panorama had done anything to create the condition of the sidewalk which caused Ms. Jordan to trip and fall.
- The sidewalk on which Ms. Jordan tripped and fell was used by all tenants and their patrons and visitors.

## VI. Analysis

¶ 23 We conclude that the undisputed facts do not support a conclusion either that Panorama was in possession of the sidewalk or that it had created a condition or conducted an activity on the sidewalk that, in turn, caused Ms. Jordan's injuries.

### A. Possession

¶ 24 It is undisputed that Panorama did not lease the sidewalk. It is also undisputed that only the landlord was obligated to maintain the sidewalk. Though tenants' employees, patients, and visitors are allowed to use the sidewalk, that possessory interest is insignificant. Indeed, it is virtually indistinguishable from the interest that any member of the public has to use the sidewalk.

¶ 25 In *Pierson,* the court did not hold that any possessory interest is sufficient to render one a landowner: the interest must be "sufficient." *Pierson,* 48 P.3d at 1220. It cited section 328E of the Restatement (Second) of Torts as articulating a broad view of who may be deemed a possessor of land. *Id.* at 1219–20. Section 328E provides that a possessor of land is:

(a) a person who is in occupation of the land with intent to control it or

a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

See also *Henderson v. Master Klean Janitorial, Inc.,* 70 P.3d 612, 614 (Colo.App.2003) (also applying § 328E to a claim under the Act).

¶ 26 Panorama does not fall within any of these categories. It did not "occupy" the sidewalk: it occupied only the leased premises. Nor is there any evidence of its intent to "control" the sidewalk.

¶ 27 Ms. Jordan's argument to the contrary relies most heavily on terms in the lease providing that Panorama had the right to remedy problems in common areas in emergencies, agreed to indemnify the property owner with respect to events "in or about the Premises," and paid part of the cost of maintaining the common areas. But the emergency and cost-sharing provisions only highlight that it was the property owner who was responsible for ordinary and continuing maintenance of the common areas. The cost-sharing provision was also merely a bargained-for allocation of expenses associated with the building. And the indemnification provision was merely an agreement between the tenant and the landlord as to the allocation of specified risks pertaining to incidents on Panorama's premises.[3] None of these provisions transferred control over any portion of the common areas to Panorama.

¶ 28 Ms. Jordan's reliance on *Wycoff* in support of her argument is misplaced. The division in that case did not hold that the defendant was a landowner because it was in possession of the property, but rather because it had conducted an activity on the property which had caused the plaintiff's injury. *Wycoff*, 251 P.3d at 1266. In any event, we note that the defendant in that case had leased the property on which the incident resulting in the plaintiff's injury had occurred. The same cannot be said in this case.

¶ 29 In sum, we conclude that, as a matter of law, the evidence did not establish that Panorama had a sufficient possessory interest in the sidewalk to be regarded as a landowner under the Act with respect thereto. *Cf. Nordin v. Madden*, 148 P.3d 218, 220–21 (Colo.App.2006) (though lease provided that landlord was responsible for maintaining and repairing the property, a genuine issue of material fact existed as to whether the tenant was in possession of the property because the tenant had in fact maintained and repaired the property for several years);

*Wilson v. Marchiondo*, 124 P.3d 837, 840 (Colo.App.2005) (where the tenant had exclusive possession of the premises, the tenant was responsible under the lease for routine maintenance, and the landlord was responsible only for major maintenance and repair, the landlord was not in possession of the property as a matter of law); *Henderson*, 70 P.3d at 614 (cleaning company was not in possession of the property where, under the terms of its contract, the landowner's property manager retained control over the maintenance of the property).

## B. Conducting an Activity

■ ¶ 30 The district court did not find, and Ms. Jordan does not contend, that Panorama created the condition on the sidewalk that caused her injuries. (As noted, there is no evidence to support such a finding.) Instead, the district court ruled, in effect, that Panorama was conducting an activity on the sidewalk because it had a business in the office building. In so ruling, the district court erred because there was no evidence either that Panorama conducted an activity on the sidewalk or that any such alleged activity caused Ms. Jordan's injuries.

¶ 31 In the context of the Act, conducting an activity on the property refers to conducting an activity on the property on which the plaintiff was injured. *See Pierson*, 48 P.3d at 1221. Here, that is the sidewalk, and there is no evidence that Panorama conducted an activity on the sidewalk. As noted, the sidewalk was not part of Panorama's leased premises, and the landlord was solely responsible for maintaining the sidewalk.

¶ 32 Though Panorama prepared incident reports when incidents involving Panorama employees or clients occurred on common areas, the preparation of such reports does not constitute conducting an activity "on" the common areas.[4] Further, the lease imposed no obligation on Panorama to investigate incidents or prepare reports. We fail to see

---

**3.** The indemnification provision is limited to events "in or about the Premises." This boilerplate limits the obligation to events occurring on the leased "Premises" or arising from activities on the leased "Premises." Ms. Jordan did not fall on the leased Premises.

**4.** The dissent says Panorama "took responsibility" for investigating incidents and preparing reports, implying that Panorama was obligated to do so. It was not. Panorama acted voluntarily.

how Panorama could have become a landowner of the sidewalk by voluntarily engaging in such precautionary activity. And we note that imposing liability on a tenant for preparing incident reports would have the anomalous effect of discouraging tenants from preparing such reports.

¶ 33 Ms. Jordan also points out that Panorama notified the property manager (or the landlord) if it perceived a need for maintenance of the common areas. The dissent goes so far as to say that Panorama "exerted control over how the common areas were managed by directing the property manager with respect to snow and ice removal, sprinkler operation, and cleaning issues." But the record shows no such "control." Rather, it shows only that Panorama alerted the property manager (or the landlord) to any need for maintenance, for which only the landlord was legally responsible. Indeed, it shows that both Panorama and the landlord regarded the landlord—and only the landlord—as the entity with control over the common areas. Moreover, imposing liability on a tenant because it requested that a landlord perform its legal obligation to maintain common areas would—as is the case with the preparation of incident reports—have the anomalous effect of discouraging tenants from reporting maintenance concerns.[5]

¶ 34 Nor does it matter that some of Panorama's patients may have used the sidewalk in walking to or from the building's parking lot. The sidewalk could be used by any member of the public. To hold that a tenant is liable for accidents occurring on a sidewalk as to which it has no possessory interest and over which it has no control would expand the reach of the Act beyond any reasonable reading of its terms.

¶ 35 The emergency maintenance and indemnification provisions of the lease do not show that Panorama had control over the sidewalk, as discussed in part VI.A above. Neither do they amount to conducting an activity "on" the sidewalk.

¶ 36 Finally, we are not persuaded that the facts that Panorama employees may

have referred to the building property as the "Panorama Medical Campus," that the building was named the "Panorama Orthopedics & Spine Center," and that the other tenants provided services available to Panorama's patients dictate a conclusion—or support, even marginally, a conclusion—that Panorama conducted an activity on the sidewalk. Our focus here must be on the reality of what conduct the entity sought to be held liable actually engaged in on the precise property at issue. These facts do not logically relate to whether Panorama itself actually conducted an activity on the sidewalk.

¶ 37 Even if a defendant conducts an activity on the property, *Pierson* expressly holds that liability under the Act requires that the plaintiff's injury must have been causally related to the defendant's activity on the property—that is, the defendant's activity must have caused the injury. *Id.*

¶ 38 *Wycoff* and *Henderson* are illustrative. In *Wycoff,* the defendant leased a ranch to host a multi-day event. One of the activities the defendant offered to guests at the event was riding an inner tube pulled by an all-terrain vehicle. The plaintiff was injured while engaging in that activity. The division concluded that the defendant was a landowner because it was legally responsible for the activity that resulted in the plaintiff's injury. *Wycoff,* 251 P.3d at 1266.

¶ 39 In *Henderson,* the plaintiff slipped and fell on stairs at his workplace. He sued the company hired to clean the workplace, alleging that he had slipped because of water left on the stairs by the cleaning company. The division held that the cleaning company was a landowner under the Act because it "was responsible for conducting an activity on the property *that allegedly resulted in injury to [the] plaintiff.*" *Henderson,* 70 P.3d at 615 (emphasis added); *cf. Legro v. Robinson,* 2012 COA 182, ¶¶ 14–17, 328 P.3d 238 (defendants who had a permit to graze sheep on property were landowners under the Act; the defendants' predator control dogs had attacked the plaintiff); *Nordin,* 148 P.3d at 221–22 (holding that a landlord was

---

5. Contrary to the dissent's suggestion, there is no evidence in the record that Panorama's actions in reporting incidents or requesting maintenance went beyond normal tenant activities.

not conducting an activity on the property because it had not conducted any activity pertaining to the hot water heater or furnace, one of which had caused the death of a tenant).

¶ 40 There is no evidence that Panorama conducted any activity on the sidewalk that caused Ms. Jordan's injuries. The district court overlooked this point entirely, and neither Ms. Jordan nor the dissent tries to explain how any of the evidence shows the requisite causal connection.

¶ 41 Our conclusion is consistent with *Pierson*. In that case, the court held that there was a factual dispute whether the defendants "were actually responsible for the precise situation that injured" the plaintiff. *Pierson*, 48 P.3d at 1221 n.7.[6] The court was clear that the defendants could be deemed landowners by virtue of conducting an activity on the property if the plaintiff had been injured as a result of their activity. *Id.* at 1221. Again, there is no evidence of such a causal connection in this case.

¶ 42 Therefore, we conclude that the district court erred in denying Panorama's motion for a directed verdict. Because of our resolution of this issue, we need not address Panorama's other claims of error.

¶ 43 The judgment is reversed.

JUDGE BERNARD concurs.

JUDGE RICHMAN dissents.

JUDGE RICHMAN dissenting.

¶ 44 Because I believe the undisputed facts show that Panorama was conducting an activity within the meaning of the Premises Liability Act on the land where plaintiff, Barbara Jordan, was injured, I respectfully dissent from the majority opinion's conclusion that Panorama is not a landowner under the Act.

¶ 45 As the majority acknowledges, the term "landowner" is broadly defined in the

Act. In *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1220 (Colo.2002), our supreme court concluded that "a person legally responsible" does *not* mean someone who could be held legally liable for the alleged tort. Rather, the term refers to "a person who is legally conducting an activity on the property or legally creating a condition on the property." *Id.* at 1221. Thus, the Act "plac[es] prospective liability with the person or entity that ... conducted the activity on the real property that, in turn, caused injury to someone." *Id.*

¶ 46 Panorama's potential liability hinges upon the undisputed fact that it was operating a medical clinic, which necessitated that its patients have ingress to and egress from its office. The evidence at trial demonstrated that the sidewalk where the accident occurred led from parking spaces reserved exclusively for the clinic's patients to Panorama's office. If a patient was injured on the sidewalk or elsewhere in the common areas, Panorama investigated the incident and prepared an accident report. Panorama employees referred to the property as "our" grounds, parking lot, and sidewalks, both in their testimony at trial and in their e-mail correspondence regarding maintenance issues at the facility. Panorama also exerted control over how the common areas were managed by directing the property manager with respect to snow and ice removal, sprinkler operation, and cleaning issues.

¶ 47 Panorama argues that it was not conducting an activity or was not legally responsible because it was not responsible for maintaining the sidewalk where Jordan was injured and did not have the right or permission to make repairs to it. Yet, in *Pierson*, our supreme court concluded that the operator of the gravel pit was a landowner, even though the county, and not the operator, was responsible for maintaining the road where the plaintiff was injured and had reserved to

---

**6.** The dissent suggests the court in *Pierson* held the defendant operator was a landowner by virtue of conducting an activity thereon. It did not. It noted merely that there was a factual dispute whether the operator had conducted an activity on the property. *Id.* The court did not identify

the facts relevant to that issue. And the court's discussion of whether the operator was a landowner by virtue of conducting an activity is arguably dictum because the court held that the operator was a landowner by virtue of possessing the property.

itself many rights under the operating agreement. *Id.* at 1216–17.

¶ 48 Panorama also suggests it was not conducting an activity or was not legally responsible because there was no evidence that any of its activities caused the uneven gap in the sidewalk where Jordan was injured. In *Pierson*, there was no finding that the seventeen-foot drop-off in the road where the plaintiff was injured had been directly caused by the mining activities of the operator, and yet it was found to be a landowner. *Id.* at 1217. In other words, under the rationale in *Pierson*, the defendant need not be the direct cause of the injury in order to be classified as a landowner.

¶ 49 The majority concludes that Panorama is not legally responsible for the condition of the sidewalk where the accident occurred because under the terms of its lease, the landlord was responsible for maintaining the common areas of the center, including the sidewalk where Jordan fell, and therefore Panorama is not a landowner as a matter of law. However, the terms of the lease are not dispositive. There is no dispute that in accordance with the lease, Panorama had an exclusive right to use a portion of the parking lot and a nonexclusive right to use the rest of it. The plain intent was that Panorama's patients would park in the parking lot and use the sidewalk to access the clinic. Thus, the lease terms do not resolve the question of whether Panorama was legally conducting an activity on the property where the accident occurred.

¶ 50 In *Pierson*, the court held that the General Assembly intended to adopt a "broad" and "expansive" definition of landowner under the Act, albeit so that property owners can claim the protections of the statute. *Id.* at 1221 & n.6. As explained in *Wycoff v. Grace Community Church*, 251 P.3d 1260, 1266 (Colo.App.2010), the statute is "protective" because it eliminates common law negligence claims while imposing only a duty of reasonable care toward invitees and even lesser duties toward licensees and trespassers. Indeed, here Panorama obtained the benefit of avoiding Jordan's common law

negligence claim.[7] With the added protection under the statute comes the responsibility to respond to claims brought under the Act.

¶ 51 Contrary to Panorama's argument, holding it liable under the Act will not create liability for every tenant of a shopping center for every injury that occurs in a parking lot. Not every such tenant "has a right to be on that property by virtue of some legally cognizable interest in the property or a right personal to that party" distinguishable from any right of the public generally. *Burbach v. Canwest Invs., LLC*, 224 P.3d 437, 441 (Colo. App.2009). Panorama's status as the major tenant at a center bearing its name—along with its exclusive use of designated parking spaces, its right to make emergency repairs, its reporting of injuries that had occurred on the sidewalk, and its extensive correspondence with the property manager—indicates that it exerted more control over the property than the usual tenant in a shopping mall.

¶ 52 Thus, Panorama was legally conducting an activity on the property, and the factual question of whether it was "actually responsible for the precise situation that injured" Jordan was properly submitted to the jury. *Pierson*, 48 P.3d at 1221 n.7.

¶ 53 The imposition of landowner status upon a tenant does not result in strict liability. For liability to an invitee, the tenant must still be found to have unreasonably failed to exercise reasonable care to protect against dangers about which it actually knew or should have known. § 13–21–115(3)(c), C.R.S.2012. A tenant who in fact had no reason to know of the relevant danger would have a factual defense at trial, rather than being exempt from liability under the Act. *Wycoff*, 251 P.3d at 1266. And a tenant is allowed to assert affirmative defenses of comparative negligence and assumption of the risk. *See Tucker v. Volunteers of America Colorado Branch*, 211 P.3d 708, 711 (Colo.App.2008), *aff'd sub nom. Volunteers of America Colorado Branch v. Gardenswartz*, 242 P.3d 1080 (Colo.2010). To the extent that Panorama argues that it should

---

**7.** The district court dismissed Jordan's negligence claim on the motion of Panorama, based in part on Panorama's argument that the Act is the exclusive remedy against landowners.

not be held liable because it exercised reasonable care as to the parking lot and sidewalk, that determination was properly made by the jury, which was properly instructed and expressly found that Panorama knew, or in the exercise of reasonable care should have known, about a danger on its property, and it failed to use reasonable care to protect against the danger.

¶ 54 Therefore, Panorama's liability derives from the specific factual scenario in which Jordan was injured, and its general status as a tenant in the shopping center should not make it exempt it from liability as a matter of law.