**Jeannee NORDIN, as the Representative of the Estate of Virgene M. Hall, Plaintiff–Appellant,**

v.

**James P. MADDEN, individually and as Trustee of the James P. Madden and Loretta J. Madden Living Trust, Defendant–Appellee.**

No. 04CA2004.

Colorado Court of Appeals, Div. I.

April 6, 2006.

Certiorari Denied Oct. 16, 2006.

Law Offices of John G. Nelson, John G. Nelson, Denver, Colorado, for Plaintiff–Appellant.

Harris, Karstaedt, Jamison & Powers, P.C., Arthur R. Karstaedt, III, Heather A. Salg, Englewood, Colorado, for Defendant–Appellee.

DAILEY, J.

In this premises liability action, plaintiff, Jeannee Nordin, acting as the representative of the estate of Virgene M. Hall, appeals the trial court's summary judgment in favor of defendant, James P. Madden, acting individually and as the trustee of the James P. Madden and Loretta J. Madden Living Trust. We reverse and remand for further proceedings.

For nine years, an elderly couple, Virgene and Roy Hall, rented a house from Madden. The parties had initially signed a one-year lease agreement. At the end of the first year, they did not sign a new agreement. The Halls thereafter resided in the house in a month-to-month tenancy, but the parties otherwise operated under the terms of the original lease.

One morning, Mrs. Hall was injured and Mr. Hall was killed by carbon monoxide poisoning from either the furnace or the hot water heater in the basement.

Mrs. Hall sued Madden and the Trust under Colorado's Premises Liability Act, § 13–21–115, C.R.S.2005, to recover damages for her injuries and for her husband's wrongful death. The trial court granted Madden's motion for summary judgment, concluding that he could not be held liable under the Premises Liability Act because he was not a "landowner" within the meaning of the Act.

Mrs. Hall appealed the trial court's ruling. During the pendency of the appeal, she died, and Nordin was substituted as the appellant.

### I. General Legal Principles

■ We review de novo the trial court's summary judgment ruling. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251, 1256 (Colo.1995).

■ The purpose of summary judgment is "to permit the parties to pierce the formal allegations of the pleadings and save the time and expense connected with a trial when, as a matter of law, based on undisputed facts, one party could not prevail." *Mt. Emmons Mining Co. v. Town of Crested Butte*, 690 P.2d 231, 238 (Colo.1984) (quoting *Ginter v. Palmer & Co.*, 196 Colo. 203, 205, 585 P.2d 583, 584 (1978)).

Summary judgment is appropriate only if the record establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *see also Nelson v. Gas Research Inst.*, 121 P.3d 340, 343 (Colo.App. 2005).

■ "The premises liability act sets forth when a 'landowner' may be held liable for the condition of or activities conducted on its property and provides the exclusive remedy against a landowner for injuries sustained on the landowner's property." *Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612, 613 (Colo.App.2003) (citation omitted).

Under § 13–21–115(1), C.R.S.2005, a "landowner" is defined as "an authorized agent or a person in possession of real property and a

person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property."

## II. Landowner: Person in Possession of Real Property

■ Nordin contends that the trial court erred in determining as a matter of law that Madden was not a "person in possession of real property," and thus not a "landowner," for purposes of the Premises Liability Act. We agree.

■ "[W]hen a landowner transfers complete control of the premises to a lessee, that landowner is no longer a person in possession for purposes of the [premises liability] statute." *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1220 (Colo.2002).

■ As noted in one leading commentary,

When an injury occurs on a portion of the premises or because of an instrumentality exclusively under the control of the tenant, the landlord is not liable since he exercises no measure of control over the area or the instrumentality. If, however, the tenant does not have exclusive control over the area, the question arises as to whether the landlord retained sufficient control to create a duty on his part to exercise due care in maintaining the area.

Glen Weissenberger & Barbara B. McFarland, *The Law of Premises Liability* § 9.12, at 254 (3d ed.2001).

The Premises Liability Act does not set forth any criteria by which to determine whether a landlord has retained sufficient control of the property to be considered a "landowner" within the meaning of the Act. Thus, we look to our case law as well as to other authorities for guidance on this issue.

According to Weissenberger, *supra*, § 9.12, at 254,

Some courts have indicated that to establish [sufficient] control on the part of the landlord, the evidence must be such that the finder of fact could conclude that the tenant, under the lease, had surrendered his right to exclusive possession and control over the premises in such a way as to share control with the landlord. The test used by other courts is that control amounts to the power or authority to manage, superintend, direct or oversee the premises.

A lessor's "reservation of the right of inspection and the right of maintenance and repairs is generally not a sufficient attribute of control to support imposition of tort liability ... for injuries to the tenant." *Wilson v. Marchiondo*, 124 P.3d 837, 840 (Colo.App. 2005); *see also Lennon v. United States Theatre Corp.*, 920 F.2d 996, 1001 (D.C.Cir.1990)("clauses assuring a right and opportunity to make repairs do not create a duty to make them").

Some courts have found insufficient landlord control even when the lease combined a reservation of the right to re-enter to make repairs with a requirement that the tenant secure the landlord's approval before making repairs. *See Schlesinger v. Rockefeller Ctr., Inc.*, 119 A.D.2d 462, 500 N.Y.S.2d 510, 512 (1986); *Flynn v. Pan Am. Hotel Co.*, 143 Tex. 219, 183 S.W.2d 446, 449–51 (1944). However, in each case, the landlord had not covenanted to make repairs and the tenants were expected to do so.

A majority of jurisdictions recognize that a duty of care may arise from a landlord's agreement to make repairs. Weissenberger, *supra*, § 9.8, at 244–45. The rationale tends to be that

the covenant to repair gives the landlord a right to enter the premises, and hence amounts to a retention of a degree of control. A more logical basis for these decisions derives from the special relationship between the parties. It also arises from the likelihood that the tenant, in reliance upon the landlord's promise to repair, might forego efforts which he might otherwise make to repair the dangerous condition.

Weissenberger, *supra*, § 9.8, at 245.

Here, the lease under which the parties operated for nine years (1) allowed Madden, in emergencies and otherwise upon giving advance notice to the Halls, the right to enter the property to inspect for damage and to make necessary repairs or improvements;

(2) prohibited the Halls from making any alterations, installations, or repairs without Madden's written permission; (3) required the Halls to notify Madden of any required maintenance and repairs; and (4) made Madden responsible for making repairs within a reasonable time after being notified of the need for repairs.

The trial court concluded that "the provisions in the lease for reserved control by the landlord, taken separately or considered cumulatively, do not constitute sufficient control to hold [Madden] liable under the Premises Liability Statute." We disagree. In our view, considered cumulatively, the provisions of the lease support the conclusion that Madden was "a person in possession" of the premises because (1) the Halls had surrendered their right to exclusive possession and control over the property in such a way as to share control with Madden, and (2) Madden had reserved the power or authority to manage, superintend, direct, or oversee repairs on the premises.

Thus, if the issue were to be resolved on the basis of the terms of the lease alone, we would conclude, as a matter of law, that Madden is a "person in possession of real property," and, hence, a "landowner" under the Premises Liability Act.

We note, however, that, in its order, the trial court found that "over the years the parties had fallen into a pattern of [the Halls'] performing the maintenance and repair of the property, without notice to [Madden], and [Madden] had not inspected the property for several years." These circumstances are relevant to whether Madden had sufficient control of the premises to be considered a "landowner." See Weissenberger, supra, § 9.12, at 254–55 (listing, among relevant factors to consider, "who uses the area in question" and "who in the past has made repairs or alterations").

The trial court did not, however, base its summary judgment ruling on these circumstances, and for good reason: some of the evidence appears subject to factual dispute; the parties' reasons for acting as they did are disputed; some of the evidence may ultimately be deemed inadmissible under applicable evidentiary rules; and, if admitted, the evidence would, at most, only create a factual issue as to whether Madden was a "landowner" within the meaning of the Premises Liability Act. These disputes do not lend themselves to resolution by summary judgment.

For these reasons, we conclude that the trial court erred in granting summary judgment in Madden's favor.

### III. Landowner: Person Legally Responsible for Condition of or Activity on Real Property

■ Because the issue may arise on remand, we also address whether Madden independently qualifies as a "landowner" under the Premises Liability Act because he is "legally responsible" for the condition of the property.

Nordin contends that Madden is "legally responsible" for the conditions on the property because a local ordinance obligates him to maintain "[a]ll mechanical equipment within [the] dwelling" in a "working, safe condition." We disagree. Nothing in the ordinance itself states that property owners would be civilly liable for violating it. See Bittle v. Brunetti, 750 P.2d 49, 59 (Colo.1988)(absent such a statement, violation of code would not be a basis for civil liability); Easton v. 1738 P'ship, 854 P.2d 1362, 1365 (Colo.App.1993)(absent "loud and clear" or specific expression of intent to impose civil liability, ordinance would not change other statutory or common law duties).

Further, in Pierson v. Black Canyon Aggregates, Inc., supra, 48 P.3d at 1220–21, the supreme court interpreted the "legally responsible" part of the "landowner" definition as referencing "a person who is legally conducting an activity on the property or legally creating a condition on the property. Such a person or entity is 'responsible' for the activity or condition and, therefore, prospectively liable to an entrant onto the property."

Thus, under Pierson v. Black Canyon Aggregates, Inc., supra, 48 P.3d at 1221, the issue is whether Madden falls within the class of "individuals or entities who are legally conducting an activity on the property or legally creating a condition on the property." Because at the time of the accident Madden

was not conducting any activity related to, or creating the condition of, the malfunctioning hot water heater or furnace, we conclude that he is not "legally responsible" for their condition.

Nordin's reliance on *Henderson v. Master Klean Janitorial, Inc., supra,* is misplaced. In *Henderson,* a building's janitorial contractor was held to be "legally responsible" for a condition that caused injury to another. In that case, however,

> [It was] undisputed that plaintiff slipped and fell on water present on the stairs and that defendant had a contractual obligation to mop up any spills of which it was aware. It [was] further undisputed that defendant's employee, the day porter on duty at the building, received a call to clean up a spill on the stairwell where plaintiff fell.
>
> Thus, defendant, through the day porter, had a legal responsibility for the condition of the stairs and was potentially liable for injuries resulting from that condition, pursuant to its contract.

*Henderson v. Master Klean Janitorial, Inc., supra,* 70 P.3d at 615.

Here, Madden had a contractual obligation to make repairs of which he was made aware. But, unlike in *Henderson v. Master Klean Janitorial, Inc., supra,* there is no evidence that Madden was ever made aware of the problem with the hot water heater or the furnace. Consequently, we conclude that Madden's contractual obligation is not a basis for determining that he was "legally responsible," within the meaning of the Premises Liability Act, for the condition of the hot water heater or the furnace.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge MÁRQUEZ and Judge ROMÁN concur.