2015 CO 24

**Barbara JORDAN, Petitioner**

v.

**PANORAMA ORTHOPEDICS & SPINE CENTER, PC, Respondent**

**Supreme Court Case No. 13SC545**

Supreme Court of Colorado.

April 13, 2015

Attorneys for Respondent: Hall & Evans, L.L.C., Alan Epstein, Denver, Colorado, Ray Lego & Associates, Michael Adams, Greenwood Village; Colorado.

Attorneys for Amici Curiae Colorado Defense Lawyers Association and National Federation of Independent Business Small Business Legal Center: Thomas Pollart & Miller LLC, Forrest Plesko, Greenwood Village, Colorado.

Attorneys for Amicus Curiae Colorado Trial Lawyers Association: Law Offices of Dianne Sawaya, LLC, Michael Douglass–Harris, Denver, Colorado, Ogborn Mihm, LLP, Thomas Neville, Denver, Colorado.

JUSTICE MÁRQUEZ delivered the Opinion of the Court.

¶ 1 In this case, we consider whether the Premises Liability Act, § 13–21–115, C.R.S. (2014) ("PLA"), applies to a commercial ten-

ant defendant in a lawsuit seeking damages for injuries the plaintiff sustained in a common area. Specifically, we must decide whether the tenant in this situation qualifies as a "landowner" under the PLA.[1]

¶2 The PLA defines a "landowner" to include both "an authorized agent or a person in possession of real property" and "a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." § 13–21–115(1). The respondent, a large orthopedics clinic, is the main tenant at a medical campus that also includes a physical therapy group, an imaging group, and a surgery center. The petitioner was a patient at the clinic who sustained serious injuries when she tripped and fell over an unevenness in the sidewalk outside the clinic—a common area under the terms of the clinic's lease. She asserted a premises liability claim against the clinic, alleging that the clinic failed to exercise reasonable care to protect against a danger of which it knew or should have known. At trial, the clinic moved for a directed verdict on grounds that it was not a landowner under the PLA. The trial court denied the motion, and the jury ultimately found in favor of the petitioner.

¶3 The clinic appealed and the court of appeals reversed, concluding that the clinic was not a landowner for purposes of the PLA. We granted certiorari review and affirm the judgment of the court of appeals. Because the clinic neither was in possession of the sidewalk where the petitioner fell, nor was it legally responsible for the condition of the sidewalk or for the activities conducted or circumstances existing there, we hold that it was not a landowner as defined by the PLA and therefore cannot be held liable under that statute's provisions.

## I. Facts and Procedural History

¶4 Petitioner Barbara Jordan sued Respondent Panorama Orthopedics & Spine Center, PC ("Panorama") for negligence and premises liability. After receiving medical treatment at Panorama, Jordan was walking to meet her husband, who was waiting for her in the parking lot, when she tripped over uneven sidewalk slabs near Panorama's main entrance. She fell and suffered a concussion and an orbital fracture.

¶5 Panorama is a large orthopedics clinic that receives upwards of 100,000 patient visits each year. The single medical building on the "Panorama Medical Campus" bears a sign with Panorama's name on it, although there are three other tenants in the building who also provide services to Panorama's patients. Under Panorama's lease with landlord PPG MOB Fund IB, LLC, Panorama has twenty-five reserved spaces in the parking lot for its exclusive use, and it operates a reception desk for the entire building.

¶6 Panorama's lease defines the leased "Premises" as "that space in the Building shown on the floor plan ... containing approximately 31,401 rentable square feet." The lease distinguishes "Common Areas" as those areas in the building complex provided by the landlord for the general non-exclusive use of tenants and others and defines such areas specifically to include sidewalks:

> The term "Common Areas" is defined as all areas and facilities outside the Premises and within the Building Complex that are provided and designated by the Landlord from time to time for the general nonexclusive use of Landlord, Tenant and of other tenants of the Building and their respective employees, suppliers, and invitees, *including but not limited to ... sidewalks....*

(Emphasis added.)

¶7 Under the lease, the landlord retains responsibility for maintaining the common areas.[2] Panorama routinely notifies the property managers via email about safety issues such as snow and ice on the sidewalks. If the landlord fails to provide maintenance,

---

1. We granted certiorari to review the following issue:

   Whether the court of appeals erred in reversing petitioner's verdict on the grounds that respondent was not a "landowner" within the contemplation of the Premises Liability Act, § 13–21–115, C.R.S. (2014).

2. The lease further gives the landlord the right to make changes to the common areas and temporarily close them for maintenance.

the lease allows Panorama to take reasonable steps to cure the landlord's failure and "the minimum steps as are reasonably necessary" to provide emergency repairs. Panorama also directs its employees to fill out incident forms if a Panorama employee is involved when a patient is injured anywhere on the property, and it sometimes reports these incidents to the property managers. In its lease, Panorama "assumes all risk of damage to property or injury to persons in, upon or about the Premises from any cause" and agrees to indemnify the landlord for any claim related to the tenancy.

¶ 8 Before trial, Panorama filed a C.R.C.P. 56(h) motion for determination of a question of law, asking the trial court to rule that Panorama owed no duty of care to Jordan under either the PLA or common law negligence. Panorama argued that it was not a statutory landowner under this court's holding in *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215 (Colo. 2002), and therefore was not liable under the PLA. In *Pierson*, we held that the PLA's dual definition of landowner broadly encompasses, first, an authorized agent or person "in possession of" land—i.e., one who occupies the land with intent to control it, although not necessarily to the exclusion of all others. *Id.* at 1219–20. Second, the alternate definition includes a person who is "legally conducting an activity on the property or legally creating a condition on the property." *Id.* at 1221. Relying on Pierson's discussion of the PLA's alternate definition of landowner, Panorama argued it was not responsible for creating a condition in the common areas, did not conduct an activity there, and had only a non-exclusive right to the use of those areas. As for Jordan's separate negligence claim, Panorama contended that it owed no duty to Jordan under a negligence theory because it had no control over the injury-causing circumstance.

¶ 9 The trial court ruled that the record before it was insufficient to determine whether Panorama owed Jordan a common law

duty of care because a factual dispute existed over Panorama's ownership, possession, and control of the sidewalk where Jordan fell. Thus, it denied Panorama's motion to determine that it owed no duty. Nevertheless, citing *Pierson*, the trial court concluded that, if Panorama owed Jordan a legal duty of care, any such duty would "fall within the purview of the [PLA] because a finding that [Panorama] was in possession or control of the injury-causing circumstances would render [Panorama] a landowner within the meaning of the [PLA]." It therefore dismissed Jordan's negligence claim.

¶ 10 Jordan's premises liability claim was tried to a jury. At the close of Jordan's case, Panorama moved for a directed verdict on grounds that it was not a landowner under the PLA because it had no control over the sidewalk. It also argued that there was no evidence that it either created a condition or conducted an activity on the sidewalk that caused Jordan's injuries.[3]

¶ 11 The trial court denied the motion, observing that Panorama was the "major tenant" that "seemed to exert more control than the usual tenant with reference to the parking lots and the sidewalks." It further noted that Panorama was "legally conducting an activity on the property" by providing medical services. Finally, it considered the indemnity clause in the lease to be evidence that Panorama "assumed the risk" and was responsible for any activity or condition in the common areas. The jury found in favor of Jordan and awarded $411,689 in damages.

¶ 12 Panorama appealed,[4] and a split panel of the court of appeals reversed. *Jordan v. Panorama Orthopedics & Spine Ctr., PC*, 2013 COA 87, ¶ 2, —— P.3d ——. The majority concluded that Panorama was not a landowner because it was not in possession of the sidewalk and did not create a condition or conduct an activity on the sidewalk that caused Jordan's injuries. *See id.* at ¶ 23. First, the majority reasoned that Panorama was not in possession of the sidewalk because

---

3. In its earlier Rule 56(h) motion, Panorama acknowledged that its employees sometimes escorted patients to their cars. No party asserts, however, that a Panorama employee was assisting Jordan to her car when she fell.

4. Jordan did not cross-appeal the trial court's dismissal of her negligence claim.

it did not "occupy" the sidewalk but rather occupied only the leased Premises. *Id.* at ¶ 26. Moreover, the record reflected no evidence of Panorama's intent to "control" the sidewalk; rather, the emergency and cost sharing provisions of the lease only highlighted that the landlord was responsible for ordinary and continuing maintenance of the common areas, and the indemnification provision pertained only to incidents on the leased Premises, not the common areas. *See id.* at ¶ 27. Second, the majority held that Panorama was not conducting an activity on the sidewalk merely because it operated a business inside the office building or because Panorama's patients (among other members of the public) used the sidewalk to walk to and from the building's parking lot. *Id.* at ¶¶ 30–31, 34.[5] Finally, the majority noted that Jordan had identified no causal connection between her injuries and any activity Panorama conducted on the sidewalk. *See id.* at ¶ 40.

¶ 13 In dissent, Judge Richman reasoned that, by operating a medical clinic that necessitated ingress to and egress from its office, Panorama was conducting an activity on the property such that it qualified as a landowner under the PLA; and the factual question of whether it was " 'actually responsible for the precise situation that injured' " Jordan was properly submitted to the jury. *Id.* at ¶¶ 44, 46, 52 (Richman, J., dissenting) (quoting *Pierson,* 48 P.3d at 1221 n.7). Judge Richman rejected Panorama's contention that it was not liable because there was no evidence that its activities caused the uneven gap in the sidewalk where Jordan fell. *Id.* at ¶ 48. In his view, this court's decision in *Pierson* did not require the defendant's activities to be the "direct cause" of the plaintiff's injuries for the defendant to be deemed a landowner. *Id.* We granted certiorari review to explain our holding in *Pierson* and apply it in this commercial tenant setting.

## II. Analysis

¶ 14 This case presents an issue of statutory interpretation, so we review the court of appeals' conclusion de novo. *Build It & They Will Drink, Inc. v. Strauch,* 253 P.3d 302, 304 (Colo.2011). Our goal in construing a statute is to ascertain and effectuate the General Assembly's intent. *Larrieu v. Best Buy Stores, L.P.,* 2013 CO 38, ¶ 12, 303 P.3d 558, 560. We look to the language of the statute and give the words their plain and ordinary meaning before resorting to interpretive rules of statutory construction or, where a statute remains ambiguous, legislative history. *Id.* at ¶ 12, 303 P.3d at 560–61; *Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1218–19 (Colo. 2002).

¶ 15 We proceed by reviewing the overall statutory scheme embodied in the PLA and examining the PLA's definition of "landowner," as previously construed by this court. We then apply that definition in the commercial tenant setting presented here. We conclude that Panorama was not a landowner within the meaning of the PLA because it was not in possession of the sidewalk where Jordan's injuries occurred and was not legally responsible for the condition of the sidewalk or for the activities conducted or circumstances existing there.

### A. Statutory Framework

¶ 16 To provide context for our discussion, we first summarize the statutory scheme establishing the hierarchy of duties that landowners owe entrants and reiterate that the PLA imposes liability only for conditions, activities, and circumstances on the property for which the landowner is liable in its legal capacity as a landowner. We then analyze the term "landowner" as that term is defined in the PLA and interpreted in our precedent. Finally, we apply these legal principles to the facts before us.

### 1. Liability Under the PLA

¶ 17 The General Assembly's primary purpose in enacting the PLA was to abrogate this court's holding in *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971). *See Gallegos v. Phipps,* 779 P.2d 856, 861 (Colo. 1989). In *Mile High Fence,* we over-

---

5. As the court of appeals majority observed, the trial court did not find—and Jordan did not contend—that Panorama created the condition on the sidewalk that caused her injuries. *Jordan,* ¶ 30.

ruled the common law of landowner liability that correlated a landowner's duty of care to an entrant's status as a trespasser, licensee, or invitee and instead adopted a single standard more akin to the duty owed in negligence—albeit one still focused on the landowner's obligations as a landowner. *See* 489 P.2d at 311, 314; *see also Pierson,* 48 P.3d at 1218 (describing this court's approach under *Mile High Fence* as applying "general negligence law, with one factor being the status of the plaintiff's entry onto the land"). Thus, we held that an occupant, "in the management of his [or her] property, should act as a reasonable [person] in view of the probability or foreseeability of injury to others." *Mile High Fence,* 489 P.2d at 314. Our holding was grounded in part on the "harsh consequences" that can result when a plaintiff fails to qualify as a licensee or invitee and therefore cannot benefit from a correspondingly higher standard of care. *See id.* at 312–13.

¶ 18 In the General Assembly's view, however, the unitary standard of care unfairly shifted responsibility for a trespasser's injuries to the landowner. *Gallegos,* 779 P.2d at 861. Accordingly, in 1986, the legislature adopted a classification system in the PLA similar to that under the common law. *See id.*[6] Thus, the PLA limits a landowner's potential liability for an "injury occurring ... on the real property of another and by reason of the condition of such property, activities conducted or circumstances existing on such property." § 13–21–115(2), C.R.S. (2014). Specifically:

- A trespasser may recover only for damages willfully or deliberately caused by the landowner. § 13–21–115(3)(a).
- A licensee may recover only for damages caused by the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew, or by the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type

involved and of which the landowner actually knew. § 13–21–115(3)(b).
- An invitee may typically recover only for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which the landowner actually knew or should have known. § 13–21–115(3)(c).

¶ 19 Importantly, the PLA limits liability only for injuries that are caused "by reason of the condition of such property, activities conducted or circumstances existing on such property." § 13–21–115(2). As we observed in *Pierson,* the overriding purpose of the PLA is to clarify and narrow private landowners' liability to persons entering their land. 48 P.3d at 1219. Thus, the PLA focuses on duties owed by a landowner in his or her legal capacity as a landowner; that is, someone who is legally responsible for the condition of the property, or for the activities conducted or circumstances existing on the property. *See* § 13–21–115(1).

¶ 20 We had an opportunity to address the reach of the PLA's liability provisions in *Larrieu v. Best Buy Stores, L.P.,* 2013 CO 38, 303 P.3d 558. In that case, the plaintiff tripped over a curb and fell at a Best Buy store while he and an employee were removing a tailgate on a trailer to load a freezer he had purchased. *Id.* at ¶ 7, 303 P.3d at 560. He brought an action under the PLA against Best Buy, alleging that he had suffered personal injury on its property and that Best Buy had breached its duty of care under the PLA. *Id.* at ¶ 8, 303 P.3d at 560.

¶ 21 The United States Court of Appeals for the Tenth Circuit certified to us the question whether the PLA applies solely to activities and circumstances that are "directly or inherently related to the land," and we answered that question in the negative. *Id.* at ¶¶ 3–4, 18, 303 P.3d at 559, 563. However, we also rejected the plaintiff's overly broad reading of the PLA, which would have extended its application to any tort that happens to occur on another's property. *Id.* at ¶¶ 18, 24, 303 P.3d at 563, 564. Instead, we

---

6. In enacting the PLA, the General Assembly declared that it was "not reinstating the common law status categories as they existed immediately prior to *Mile Hi Fence v. Radovich* [sic] ... but that its purpose is to protect landowners from liability in some circumstances when they were not protected at common law." § 13–21–115(1.5)(e).

construed the statute to apply to "conditions, activities, and circumstances on the property that the landowner is liable for in its legal capacity as a landowner." *Id.* at ¶ 18, 303 P.3d at 563. Liability under the PLA thus necessitates a "fact-specific, case-by-case inquiry" into whether the plaintiff's alleged injury occurred while on the landowner's real property and by reason of the property's condition or as a result of activities conducted or circumstances existing on the property. *Id.*

### 2. Definition of "Landowner"

¶ 22 Our conclusion in *Larrieu* regarding the scope of the PLA drew from our construction of the term "landowner" in *Pierson*. *See Larrieu,* ¶¶ 20–24, 303 P.3d at 563–64. Under the PLA, the term "landowner" encompasses both: (1) "an authorized agent or a person in possession of real property"; and (2) "a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." § 13-21-115(1). Both statutory definitions confer landowner status on those who are responsible for the conditions, activities, or circumstances existing on real property.

¶ 23 With respect to the first statutory definition, we held in *Pierson* that a person "in possession of" land is one who occupies the land with intent to control it, although not necessarily to the exclusion of all others. 48 P.3d at 1219–20 (citing Restatement (Second) of Torts § 328E (1965)). Logically, a person "in possession of" real property is presumed to be responsible for the conditions, activities, or circumstances on that property. However, through the second statutory definition, the General Assembly also conferred landowner status on persons who are otherwise legally responsible for the conditions, activities, or circumstances on the property—even though such persons are not in possession of the property. § 13-21-115(1). The second statutory definition, although broad, limits the protection of the PLA to those with legal authority to be on the land. *Pierson,* 48 P.3d at 1221. At the same time, it places prospective liability with those who are legally responsible for the

conditions, activities, or circumstances on the property. *Id.*

¶ 24 We held in *Pierson* that this second statutory definition includes a person who is "legally conducting an activity on the property or legally creating a condition on the property." *Id.* The alleged landowner in *Pierson* was an independent contractor that had entered into an agreement with Montrose County in 1996 authorizing it to crush gravel at a gravel pit on property that the county leased from private owners. *Id.* at 1216. The county did not assign its lease to the gravel pit operator and retained the right to enter the property to correct dangerous conditions. *Id.* at 1216–17. In April 1997, the plaintiff was traveling along a road that ran through the gravel pit when he drove over a drop-off caused by years of excavation and mining activities. *Id.* at 1217. He sued the gravel pit operator and its owner under the PLA but did not name the county as a defendant. *Id.* at 1217 & n.3. The gravel pit operator and its owner moved for summary judgment, arguing that they were not landowners under the PLA because the county was in possession of the gravel pit. *Id.* at 1217. The trial court granted the motion, and the court of appeals affirmed. *Id.* at 1217–18.

¶ 25 We reversed. *Id.* at 1221. In light of the PLA's broad language, we held that a landowner under the first statutory definition is any person in possession of real property with intent to control it, but that such possession need not necessarily be to the exclusion of all others. *Id.* at 1219–20. Given the facts before us in *Pierson,* we further held that the second statutory definition of landowner includes a person who is "legally conducting an activity on the property or legally creating a condition on the property." *Id.* at 1221. Applying these definitions to the gravel pit operator, we concluded that it was both sufficiently in possession of the property to qualify as a landowner and was legally conducting an activity on the property that allegedly injured the plaintiff. *Id.* We noted, however, that whether the gravel pit operator was "actually responsible for the precise situation that injured [the plaintiff]" was a question for the trier of fact on remand. *Id.*

at 1221 n.7. In other words, the gravel pit operator qualified as a landowner under the PLA, but whether it was actually liable under the statute remained to be determined.

## B. Application

¶ 26 We now turn to the case before us. First, we conclude that Panorama was not in possession of the sidewalk where Jordan fell because, under the terms of the lease, it had only a right of non-exclusive use of the common areas and the landlord retained responsibility for maintaining those areas. Second, we conclude that Panorama was not legally responsible for the condition of the sidewalk where Jordan's injuries occurred or for activities conducted or circumstances existing there. We therefore hold that Panorama is not a landowner within the meaning of the PLA.

### 1. Possession

¶ 27 Jordan first contends that Panorama was "in possession of" the common areas, including the sidewalk where she fell, because it was the dominant tenant at the Panorama Medical Campus. She points out that Panorama operated a reception desk for the entire building, erected a sign on the building bearing its name, and marketed the campus as a "one-stop shop" for orthopedic patients. We disagree that these facts alone establish that Panorama was in possession of the common areas within the building complex.[7]

¶ 28 As discussed above, we indicated in *Pierson* that a person "in possession of" land is one who is "in occupation of the land with intent to control it." 48 P.3d at 1219–20 (citing Restatement (Second) of Torts § 328E (1965)). Although we held that a person need not possess property "to the exclusion of all others" to qualify as a landowner, *id.* at 1220, possession necessarily

connotes the right to exclude at least *some* others. *Cf. Esser v. McIntyre*, 169 Ill.2d 292, 214 Ill.Dec. 693, 661 N.E.2d 1138, 1143 (1996) (holding that the defendant "was not an occupier of land because he did not intend to control the common area," which was "open to anyone who might choose to walk through"). Here, the lease states that the common areas are for "the non-exclusive use" of the tenant. Nothing in the record before us suggests that Panorama could exclude *anyone* from common areas other than its reserved spaces in the parking lot. Moreover, the fact that Panorama provided a reception desk for the building and held itself out as the main tenant on the campus does not establish that it controlled the common areas of the campus sufficiently to possess them for purposes of the PLA.

¶ 29 Furthermore, Panorama did not have responsibility for the ordinary maintenance and upkeep of the common areas under the terms of the lease. Jordan contends that Panorama nevertheless controlled the common areas because it notified the property managers of maintenance issues and was authorized under the lease to make emergency repairs in common areas in the event that the landlord failed to do so. We disagree. To be sure, a tenant might be said to "control" a common area by taking on maintenance responsibilities. *Cf. Nordin v. Madden*, 148 P.3d 218, 221 (Colo. App. 2006) (opining that a landlord who had the right to make repairs shared control with the tenants). Under the lease here, however, the landlord expressly retained such responsibilities. *Cf. Howe v. Kroger Co.*, 598 S.W.2d 929, 931 (Tex. Civ. App. 1980) (concluding that a tenant who was *not* responsible for maintaining common areas had no control over a sidewalk). We are unaware of any case holding that a tenant controls—and

---

**7.** Jordan suggests that the court of appeals erred by failing to apply a "totality of the circumstances" test to determine whether Jordan was a landowner under the PLA, instead favoring some facts over others in its analysis. We have never enunciated a totality-of-the-circumstances test for landowner status; rather, the court must reach a legal determination based on the facts it concludes are most relevant. *See Lakeview Assocs. v. Maes*, 907 P.2d 580, 583–84 (Colo. 1995) ("When

... the controlling facts are undisputed, the legal effect of those facts constitutes a question of law."). As we explain in this opinion, for purposes of determining whether a defendant is a landowner under the PLA, the relevant inquiry remains whether the defendant is in possession of the property where the plaintiff's injuries occurred or is otherwise legally responsible for the condition of the property or for the activities conducted or circumstances existing there.

thereby has possession of—a common area merely by ensuring that others fulfill their obligations there. Rather, we agree with the court of appeals majority that Panorama did not exert control over the common areas by alerting the property manager or landlord to maintenance issues in these areas. *See Jordan v. Panorama Orthopedics & Spine Ctr., PC,* 2013 COA 87, ¶ 33, ⸺ P.3d ⸺. Panorama likewise did not exert control over the common areas (and thereby possess those areas) by virtue of its contractual authority to take minimum steps to address dangerous conditions in emergencies. *See Nordin,* 148 P.3d at 221 (considering a landlord's right to make emergency repairs, *in addition to* other lease provisions allowing entry, to conclude that the landlord had sufficient control under the lease to be a landowner). Indeed, as Jordan's counsel admitted at oral argument before this court, it is unclear whether Panorama was even authorized under the lease to repair the unevenness in the sidewalk at issue here.

¶ 30 Finally, we find unpersuasive Jordan's argument that Panorama was in possession of the sidewalk because it had exclusive use of reserved spaces in the parking lot. That Panorama had exclusive rights to an adjacent area does not mean it had control over—and thereby possessed—the sidewalk. *See Wark v. United States,* 269 F.3d 1185, 1187–88 (10th Cir. 2001) (holding that the U.S. Forest Service was not the owner of a county road for purposes of the PLA even though the road was situated in a national forest).[8] In sum, we reject Jordan's contention that Panorama was "in possession of" the common area where her injuries occurred.

#### 2. Legal Responsibility for Conditions, Activities, or Circumstances on the Property

■ ¶ 31 Jordan also contends that, even if Panorama was not in possession of the sidewalk, it nevertheless meets the second statutory definition of "landowner" because it was legally responsible for the condition of

the sidewalk where she was injured. We disagree.

¶ 32 As discussed above, the PLA confers landowner status on those who are legally responsible for the conditions, activities, or circumstances existing on real property. Thus, a landowner under the PLA includes, in addition to a person "in possession of" real property, a person who is "legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." § 13–21–115(1). This second statutory definition limits the protection of the PLA to those with legal authority to be on the land, while placing prospective liability with those who are legally responsible for the conditions, activities, or circumstances on the property. *Pierson,* 48 P.3d at 1221.

¶ 33 Jordan reads *Pierson* to mean that, to be a landowner under the PLA, the defendant's activities need not have caused the plaintiff's injuries. The court of appeals dissent likewise noted there was no evidence in *Pierson* that the gravel pit operator had created the drop-off in the road, and therefore, under our rationale in that case, the defendant need not be the direct cause of the plaintiff's injury to be a landowner. *Jordan,* ¶ 48 (Richman, J., dissenting). However, both Jordan and the dissent have misconstrued the focus of our holding in that case. The gravel pit operator in *Pierson* qualified as a landowner under the PLA because it was responsible for the condition of the property when and where the accident occurred. *Pierson,* 48 P.3d at 1221. Indeed, it was conducting mining activities in the area and possibly created the very condition that injured the plaintiff. *Id.* at 1217. Thus, the operator was not entitled to summary judgment on grounds that it was not a landowner under the PLA. *See id.* at 1221 & n.7. However, we remanded the case for a factfinder to determine actual causation for purposes of ultimate liability under the PLA— i.e., whether the gravel pit operator was "actually responsible for the precise situation that injured" the plaintiff. *Id.*

8. Although the facts and holding of *Wark* are illustrative, we disagree with its analysis implying that a non-titleholder must have "complete possession and control over the property" to be a landowner. *See* 269 F.3d at 1188. As discussed above, our decision in *Pierson* makes clear that exclusive possession is not a requirement of the PLA. *See* 48 P.3d at 1220.

¶ 34 Here, by contrast, Panorama was not legally responsible for the condition of the sidewalk or for the activities conducted or circumstances existing there. Moreover, Panorama was not conducting any activity on the sidewalk where Jordan fell.

¶ 35 The lease in this case assigned responsibility for the ordinary maintenance and upkeep of the common areas to the landlord. That Panorama had a non-exclusive right to use the sidewalk did not make Panorama legally responsible for the conditions there. Similarly, that Panorama documented and notified the property managers of dangerous conditions in common areas did not give rise to any duty to repair such conditions or otherwise make Panorama a landowner for purposes of the PLA. Panorama did not assume a duty to repair the sidewalk, and, even if it had, that would not affect its status under the PLA. *See Jefferson Cnty. Sch. Dist. R–1 v. Justus*, 725 P.2d 767, 771 (Colo. 1986) (holding that, under the "assumed duty" doctrine, a plaintiff may recover if (1) the defendant "undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff"; and (2) the plaintiff relied on the defendant to perform the service or the defendant's undertaking increased the plaintiff's risk).

¶ 36 We also reject Jordan's argument that Panorama should be held liable under the lease provision by which Panorama assumed the risk of injury to persons "in, upon or about the Premises from any cause" and agreed to indemnify the landlord for any claim related to the lease. Even if this provision pertaining to "the Premises" could be construed to allocate to Panorama the risk of injuries that occur in *common areas,* we fail to see how it affects Panorama's status as a landowner under the PLA. As explained above, to be a landowner under the PLA one must either be in possession of real property or be otherwise legally responsible for the conditions, activities, or circumstances existing on the property. We agree with Pano-

rama that merely promising to indemnify another party (here, the landlord) for its liability does not transform a defendant into a landowner. *See Constable v. Northglenn, LLC,* 248 P.3d 714, 718 n.2 (Colo. 2011) (noting that the inquiry as to landowner status under the PLA is separate from the question whether a tenant agreed to indemnify the landlord for injuries occurring in common areas).

¶ 37 In sum, Panorama was not legally responsible for the condition of the sidewalk or for the activities conducted or circumstances existing there. Moreover, we note that Panorama was not conducting any activity on the sidewalk where Jordan fell.[9] Although Panorama operates a medical clinic that necessitates patients' ingress and egress from its office, the fact that the public must pass through common areas to access a tenant's business does not necessarily mean that the tenant is conducting an activity in the common areas. To conclude otherwise would mean that any tenant could be held liable under the PLA for an accident in a common area if the plaintiff intended to enter the defendant's premises at some point during his or her visit.

## III. Conclusion

¶ 38 Panorama was not in possession of the sidewalk where Jordan sustained her injuries and was not otherwise legally responsible for the condition of the sidewalk or for the activities conducted or circumstances existing there. Accordingly, we hold that Panorama was not a landowner as defined by the PLA and is not liable under that statute's provisions. We therefore affirm the judgment of the court of appeals.

---

9. Jordan does not contend that Panorama created the condition on the sidewalk that caused her injuries. *See supra* note 5.