23CA1768 Farinas v 712 Mayor Patricia 12-12-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1768
Saguache County District Court No. 22CV30021
Honorable Christopher J. Munch, Judge

---

Luis Farinas,

Plaintiff-Appellee,

v.

712 Mayor Patricia, LLC, a Colorado limited liability company,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 12, 2024

---

Robinson & Henry, P.C., Benjamin C. Whitney, Denver, Colorado, for
Plaintiff-Appellee

3I Law, LLC, April Greene Apking, Jessamyn L. Jones, Denver, Colorado, for
Defendant-Appellant

¶ 1     In this negligence action, defendant 712 Mayor Patricia, LLC, appeals the trial court's order denying its motion for a directed verdict against the plaintiff, Luis Farinas.  We affirm.

## I.     Background

¶ 2     In the summer of 2021, 712 Mayor Patricia, a real estate holding company, purchased a parcel of land in Saguache County from South Platte Distributors, LLC.  As part of that transaction, 712 Mayor Patricia agreed to (1) rent the premises to South Platte and (2) replace an existing marijuana greenhouse on the property with a different structure.  In late November, LB Distribution, LLC, bought the greenhouse for purposes of reusing its components.  LB Distribution agreed to disassemble and remove the structure from the property.

¶ 3     Roughly two weeks later, a windstorm swept through the area, blowing off multiple roof panels from the partially dismantled greenhouse onto Farinas's neighboring property.  Some of the flying debris hit Farinas's two greenhouses, ripping through the protective sheeting and exposing his marijuana plants to the freezing outside environment.  Following the storm, Farinas tried to patch the damaged sheeting and restore appropriate temperature inside the

1

greenhouses using additional heaters. His attempts proved futile, and he lost all 816 marijuana plants in his commercial crop.

¶ 4       Farinas brought a negligence action for the loss of his plants against 712 Mayor Patricia, South Platte, and Duong Hau. Hau is the owner of both 712 Mayor Patricia and South Platte. The defendants filed a cross-complaint against LB Distribution, alleging that it was negligent in the disassembly and removal of the greenhouse from 712 Mayor Patricia's property because "it failed to adequately secure the [g]reenhouse during the windstorm."[1]

¶ 5       The suit proceeded to trial and at the close of Farinas's case, the defendants moved for a directed verdict under C.R.C.P. 50. They contended that Farinas "ha[d] failed to introduce . . . permissible evidence of damages" and that he had failed to establish that they owed him a legal duty of care at the time of the accident. In addition, the defendants argued that there had been no evidence that the corporate veil had been pierced with regard to Hau. The trial court granted a directed verdict in favor of South

---

[1] Because LB Distribution was unable to obtain representation, the trial court dismissed it from the suit and designated it as a nonparty at fault.

Platte and Hau. But the court denied 712 Mayor Patricia's motion for a directed verdict and permitted it to make a further appellate record by filing a supplemental written motion, which 712 Mayor Patricia did.

¶ 6     The jury returned a verdict in Farinas's favor, awarding him $285,000 in damages and apportioning 75% of the fault to 712 Mayor Patricia and 25% to LB Distribution as a designated nonparty at fault. Accordingly, the trial court entered judgment in the amount of $213,750 against 712 Mayor Patricia.

¶ 7     On appeal, 712 Mayor Patricia contends that the court erred by denying its motion for a directed verdict because Farinas failed to establish (1) his damages with reasonable certainty and (2) that 712 Mayor Patricia owed him a legal duty of care at the time of the accident. We disagree on both counts.

## II.     Analysis

### A.     Elements of Negligence and Standard of Review

¶ 8     To prevail on a negligence claim, a "plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and that the defendant's breach caused the plaintiff's injury." *Day v. Johnson*, 255 P.3d 1064, 1068-69 (Colo. 2011).

¶ 9 C.R.C.P. 50 authorizes a party to move for a directed verdict on a claim at the close of the evidence offered by the opposing party or at the close of all the evidence. But "[d]irected verdicts are not favored." *Langlois v. Bd. of Cnty. Comm'rs*, 78 P.3d 1154, 1157 (Colo. App. 2003). A trial court may grant such relief "only if the evidence, considered in the light most favorable to the nonmoving party, 'compels the conclusion that reasonable persons could not disagree and that no evidence, or legitimate inference therefrom, has been presented upon which a jury's verdict against the moving party could be sustained.'" *State Farm Mut. Auto. Ins. Co. v. Goddard*, 2021 COA 15, ¶ 25 (quoting *Burgess v. Mid-Century Ins. Co.*, 841 P.2d 325, 328 (Colo. App. 1992)). Accordingly, the court should deny a motion for a directed verdict "unless there is no evidence that could support a verdict against the moving party on the claim." *Parks v. Edward Dale Parrish LLC*, 2019 COA 19, ¶ 10.

¶ 10 We review de novo the trial court's ruling on a motion for a directed verdict. *Argo v. Hemphill*, 2022 COA 104, ¶ 19. In doing so, we apply the same standards the court does. *Goddard*, ¶ 25. Whether a particular defendant owes a legal duty to a particular

plaintiff is also a question of law that we review de novo. *See Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 18.

### B. The Trial Court Didn't Err by Denying a Directed Verdict Based on the Evidence of Damages

¶ 11 712 Mayor Patricia contends that "[t]he trial court erred [by] denying the motion for directed verdict because Mr. Farinas failed to establish damages beyond mere speculation." It contends that it was entitled to a directed verdict on the issue of damages because (1) Farinas "failed to present probative, credible, and competent evidence of lost profits because he presented only his own conclusory opinion of the gross revenue value of his [marijuana plants]"; (2) Farinas presented no evidence as to whether his destroyed plants were of "commercial quality" or had "value to commercial buyers"; and (3) the sought lost profit damages were improper given that "[t]he commercial marijuana industry is speculative in nature." We conclude that the first argument is not preserved, and we're not persuaded by the other two.

### 1. Applicable Law

¶ 12 "The principle of making the injured party whole underlies all negligence cases." *Hodge v. Matrix Grp., Inc.*, 2022 COA 4, ¶ 13

5

(quoting *Cope v. Vermeer Sales & Serv. of Colo., Inc.*, 650 P.2d 1307, 1309 (Colo. App. 1982)). "As a general rule, a party is entitled to recover for damages that naturally and probably result from the negligence of another." *Id.* To do so, the party must prove the damages they suffered with reasonable certainty. *Boulders at Escalante LLC v. Otten Johnson Robinson Neff & Ragonetti PC*, 2015 COA 85, ¶ 55.

¶ 13　　However, "[t]he rule which precludes recovery of uncertain and speculative damages applies only where the fact of damages is uncertain, not where the amount is uncertain." *Cope*, 650 P.2d at 1309 (citing *Peterson v. Colo. Potato Flake & Mfg. Co.*, 435 P.2d 237, 239 (Colo. 1967)). Accordingly, once the party has established the fact of damages, the party need not prove the measure of damages with mathematical certainty. *See Hoff & Leigh, Inc. v. Byler*, 62 P.3d 1077, 1079 (Colo. App. 2002); *see also Cope*, 650 P.2d at 1309 ("Difficulty or uncertainty in determining the precise amount does not prevent an award of damages."). Rather, the party must only "provide evidence sufficient to allow a reasonable estimate of the loss sustained." *Byler*, 62 P.3d at 1079.

## 2. Discussion

¶ 14 It's a well-established rule that a property owner is competent to testify about his opinion of the value of his own property without being qualified as an expert, as long as that opinion is based on proper considerations. *See Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 69 (Colo. App. 2004); *In re Marriage of Plummer*, 709 P.2d 1388, 1389 (Colo. App. 1985); *see also Denver Urb. Renewal Auth. v. Berglund-Cherne Co.*, 568 P.2d 478, 483 (Colo. 1977) (extending this rule to the testimony about the value of a company's property from an officer of the corporation). Farinas gave such an opinion in this case.

¶ 15 Farinas testified that he had lost in total 816 marijuana plants due to the accident. In support, he presented a Metrc report that, among other things, identified the reason for each plant's death (cold weather), its strain, the greenhouse it was grown in, and whether the plant was in a vegetative or flowering phase.[2] Farinas

---

[2] Metrc is marijuana track and trace software that the Colorado Department of Revenue, Marijuana Enforcement Division, utilizes to track medical and recreational marijuana markets through unique RFID identifiers that are integrated inside the software and assigned to each plant. Metrc, https://perma.cc/TPV2-432N.

had been growing commercial marijuana for about five years at the time of trial. He stated that, in his experience, each plant could produce between one and three pounds of flowers, which is the portion of the plant he would sell. In calculating the value of his plants, however, Farinas selected the lower end of this range and assumed that each destroyed plant would have yielded one pound of flowering material. Then, he multiplied 816 pounds of lost product by the average market rate to arrive at the measure of his damages — roughly $775,000.

¶ 16    Like the trial court, we conclude that Farinas's opinion about the value of his lost marijuana plants constituted sufficient evidence to survive 712 Mayor Patricia's motion for a directed verdict and have the issue of damages submitted to the jury.

### a.    712 Mayor Patricia Didn't Preserve Its Net Profits Argument

¶ 17    In arguing otherwise, 712 Mayor Patricia asserts that Farinas only presented his "self-serving testimony regarding what he believed he would have sold his crop for." Relying on *Hoover v. Shott*, 189 P. 848 (Colo. 1920), it contends that Farinas was required, but failed, to offer "evidence, by way of testimony or other

documentation, as to his overhead, cost of doing business, or historical sales data to establish what his *net* profits would have been had he sold his crops for the price stated." In other words, 712 Mayor Patricia posits that it was entitled to a directed verdict because Farinas's damages calculation was based on his estimated *gross* lost profits, not the profits he would have made after incurring costs associated with the "maturing, harvesting, and marketing" of his plants. *See id.* at 849.

¶ 18     But the record shows that 712 Mayor Patricia didn't preserve this argument in the trial court.[3] At the close of Farinas's case, 712 Mayor Patricia requested a directed verdict on the grounds that Farinas didn't present any documentation — such as receipts, invoices, contracts, or manifests — in support of his opinion about the market value of his plants, the amount of product his plants would have yielded upon maturation, or whether he would have been able to sell his product for the assumed price. 712 Mayor

---

[3] We note that Farinas concedes preservation. However, we're not bound by his concession because we have an independent, affirmative duty to determine whether this issue is preserved for appellate review. *See People v. Tallent,* 2021 CO 68, ¶ 11.

Patricia repeated those arguments in the supplemental motion for a directed verdict it filed after the trial. It also supplemented its arguments to point out that Farinas didn't demonstrate he would get a full crop, that he had any buyers, what they would purchase the crop for, and whether he would get maximum return per plant. And 712 Mayor Patricia argued that the marijuana market is inherently speculative, preventing damages for lost profits. But at no point did 712 Mayor Patricia contend that the measure of Farinas's damages was uncertain or speculative because it only captured his gross, as opposed to his net, lost profits.

¶ 19    "It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal." *Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18; *see also Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("We review only the specific arguments a party pursued before the district court."). When a party fails to advance an argument in the trial court, that argument is generally deemed waived. *Melat, Pressman & Higbie, L.L.P.*, ¶ 18. Under the circumstances of this case, then, we conclude that 712

Mayor Patricia waived this issue.  We thus decline to consider it further.

### b. Supporting Documentation for the Value of Farinas's Plants

¶ 20    712 Mayor Patricia argues that a directed verdict was warranted because Farinas presented no supporting documentation — let alone expert testimony — about the market value of his marijuana plants, that those plants would have produced the amount of commercially viable product he assumed in calculating his damages, or that he would have been able to sell the entire expected yield to commercial sellers.

¶ 21    As we note above, Farinas didn't need to be qualified as an expert before he could opine about the value of the personal property he had lost as the result of the accident.  *See Vista Resorts, Inc.*, 117 P.3d at 69; *Plummer,* 709 P.2d at 1389.  And while, perhaps, supporting documentation and expert testimony would have made Farinas's case stronger, the absence of that additional evidence doesn't mean that "no evidence . . . has been presented upon which a jury's verdict against [712 Mayor Patricia] could be sustained."  *Goddard,* ¶ 25 (citation omitted).  Indeed, his

opinion as to the value of his plants constituted competent evidence both as to the fact of damages and its amount.[4] *Byler*, 62 P.3d at 1079.

¶ 22    Thus, what 712 Mayor Patricia effectively challenges here is the weight to be given to that opinion considering that Farinas didn't introduce more evidence in support of his testimony. But the weight to give to Farinas's testimony — as well as his credibility — when deciding damages were questions of fact for the jury to resolve, not a question of law for the trial court to resolve at the directed verdict stage of the proceedings. *See Scholle v. Ehrichs*, 2022 COA 87M, ¶ 50, *aff'd in part and rev'd in part on other grounds*, 2024 CO 22.

c.    Speculative Nature of Marijuana Industry

¶ 23    Finally, 712 Mayor Patricia posits that the trial court erred by denying its motion for a directed verdict because the speculative and unpredictable nature of the commercial marijuana industry rendered the sought lost profit damages improper. It points out

_____

[4] Notably, 712 Mayor Patricia's trial counsel conceded that, as the owner of the plants, Farinas could testify about the average market rate for his plants.

that Farinas's plants weren't mature at the time of the storm and that, in calculating the damages, he only speculated that they would have reached maturity. Among other things, 712 Mayor Patricia asserts that, while Farinas testified that a successful cultivation required "good conditions," he "failed to introduce any evidence explaining these ideal conditions of growth, whether these allegedly ideal conditions had the support of industry experts, whether his greenhouse[s] met any of these conditions, or whether he made any efforts to minimize the uncertain nature of crop growth."

¶ 24    But 712 Mayor Patricia can't prevail on this argument because Farinas did testify about these issues. He stated that, in his experience, successful greenhouse marijuana cultivation was dependent on the appropriate climate inside the greenhouse. Farinas opined that a hot climate of about eighty degrees was ideal and stated that he had maintained proper temperature inside both greenhouses before they sustained damage. And he testified that, at the time of the accident, the plants located in one greenhouse were roughly three weeks out from harvest and those grown in the other greenhouse would have been ready in about a month and a

half.  This record shows that, even if we were to agree with 712 Mayor Patricia's argument about the speculative nature of the commercial marijuana industry as a whole, Farinas presented evidence that his plants were close to maturity.  Viewing this evidence in the light most favorable to Farinas as the nonmoving party, reasonable persons could conclude that his marijuana plants — while immature at the time of the accident — would have fully matured.  *See Goddard,* ¶ 25.

¶ 25    In sum, we conclude that Farinas presented sufficient evidence in support of his damages request for the trial court to submit that issue to the jury and deny 712 Mayor Patricia's motion for a directed verdict.  This claim thus fails.

### C.    The Trial Court Didn't Err by Denying 712 Mayor Patricia's Motion for a Directed Verdict on the Issue of Legal Duty of Care

¶ 26    712 Mayor Patricia next contends that the trial court erred when it denied the motion for a directed verdict asserting that Farinas had failed to establish that 712 Mayor Patricia owed him a legal duty of care.  Specifically, 712 Mayor Patricia contends (1) that Farinas "presented no evidence that [712 Mayor Patricia] was the possessor and in control of the greenhouse" that caused damage to

his property.  It further asserts that, even if Farinas presented sufficient evidence in support of the duty element of his negligence claim, he didn't (2) argue the proper standard for establishing a legal duty "until the trial court gave him this information during the [trial]" or (3) present any evidence regarding the proper standard of care to establish a breach.

1.    712 Mayor Patricia Didn't Preserve the Duty Argument Relying on Its Lack of Possession and Control of the Greenhouse

¶ 27    As an initial matter, in support of its argument that it had no duty because it didn't possess or control the greenhouse, 712 Mayor Patricia directs our attention to jury instruction number 9, which the court drafted and provided to the jury after denying 712 Mayor Patricia's motion for a directed verdict:

> An owner of land is subject to liability for harm to persons outside of the owner's land caused by activity of others on the owner's land if landlord authorized the activity and if, but only if,
>
> (a) the landowner, at the time of authorizing the activity, knew that the activity would be carried on, and
>
> (b) the landowner knew or had reason to know that the activity would unavoidably involve an unreasonable risk without necessary precautions for safety being taken.

712 Mayor Patricia asserts that "[t]he trial court apparently based this instruction" on the following language in section 54 of the Restatement (Third) of Torts: "The possessor of land has a duty of reasonable care for artificial conditions or conduct on the land that poses a risk of physical harm to persons or property not on the land." Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 54 (Am. L. Inst. 2012). Then, relying on the restatement's definition of a "possessor of land," 712 Mayor Patricia contends that LB Distribution, and not it, was the possessor of the greenhouse. *See id.* at § 49. 712 Mayor Patricia then concludes that LB Distribution owned the greenhouse and was solely responsible for its disassembly and removal from the property.

¶ 28     But contrary to 712 Mayor Patricia's assertion, the trial court didn't base its duty instruction on section 54 of the Restatement (Third) of Torts. Instead, it relied on a case from a division of this court. As the trial court told the parties during oral argument on the motion for a directed verdict, it was basing the jury instruction on a restatement provision that the division adopted in *Gonzales v. Bierman,* 773 P.2d 629 (Colo. App. 1989). The *Gonzales* court

adopted section 379A of the Restatement (Second) of Torts (Am. L. Inst. 1965), which says that

> [a] lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,
>
> (a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and
>
> (b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.

*Gonzales*, 773 P.2d at 630.

¶ 29 Accordingly, 712 Mayor Patricia's argument that it had no legal duty under section 54 of the Restatement (Third) of Torts because it wasn't the possessor of the greenhouse is misplaced. That argument is premised on the incorrect characterization of the court's instruction and inapplicable law.

¶ 30 Regardless, this argument is waived because 712 Mayor Patricia failed to preserve it in the trial court. 712 Mayor Patricia contended that it was entitled to a directed verdict on the issue of duty because the Colorado Premises Liability Act (PLA) abrogated a

17

common law duty of a landowner to others.  It further argued that, even if a landowner's duty continued to exist after the PLA was enacted, LB Distribution — not 712 Mayor Patricia — was the landowner "under the alternative definition of landowner created by the PLA and the [Colorado] Supreme Court" in *Jordan v. Panorama Orthopedics & Spine Center, PC,* 2015 CO 24.  And in support of this argument, 712 Mayor Patricia asserted that LB Distribution conducted "an activity on the [p]roperty when [it took] possession of its own greenhouse" and "legally created the condition during the disassembly of the greenhouse."

¶ 31    True, during argument on its oral motion for a directed verdict, 712 Mayor Patricia argued that it had no duty because it was "undisputed that [it] didn't control, possess, or own the injury causing circumstance" (i.e. the greenhouse).  But it also premised this argument on the PLA and the assertion that there was no common law negligence claim.  Specifically, 712 Mayor Patricia cited *Woods v. Delgar Ltd.,* 226 P.3d 1178 (Colo. App. 2009), to argue that *Gonzales* and section 379A of the Restatement (Second) of Torts didn't apply here.

18

¶ 32   But it didn't argue what it argues on appeal: that the trial

court's instruction adopted the duty standard set forth in section

54 of the Restatement (Third) of Torts; that 712 Mayor Patricia

didn't owe a legal duty under that standard because it wasn't a

"possessor of land" within the meaning of that term under section

49 of the Restatement (Third) of Torts; and that the court's duty

jury instruction, in 712 Mayor Patricia's words, "presupposed that

[712 Mayor Patricia] was the 'possessor' of the greenhouse at the

time of the alleged damage to Mr. Farinas'[s] crops, alleviating [him]

of his burden of proof related to [712 Mayor Patricia's] duty to him."

¶ 33   Because 712 Mayor Patricia failed to present these points in

its motion for a directed verdict, the trial court had no opportunity

to assess their merits when ruling on the motion.  *See Cuevas v.*

*Pub. Serv. Co. of Colo.*, 2023 COA 64M, ¶ 35 n.3 (noting that

although parties are not required to use "talismanic language" to

preserve issues for appeal, the district court must be presented with

an adequate opportunity to make findings of fact and conclusions of

law on the issue (quoting *People v. Melendez*, 102 P.3d 315, 322

(Colo. 2004))) (*cert. granted in part* July 1, 2024).  Under these

circumstances, we consider this issue waived, and we decline to address it further.  *See Melat, Pressman & Higbie, L.L.P.*, ¶ 18.

### 2. 712 Mayor Patricia Didn't Preserve Its Instructional Challenge

¶ 34    712 Mayor Patricia also argues for the first time on appeal that because Farinas didn't provide a jury instruction setting forth "the correct standard by which to establish a duty under a common law negligence claim, it was error for the trial court to provide the proper standard for him."

¶ 35    However, the record shows that during oral argument on the motion for a directed verdict, 712 Mayor Patricia itself agreed to the jury instruction that the court prepared sua sponte.  Specifically, after the trial court observed that section 379A of the Restatement (Second) of Torts set forth the governing duty of care standard, it pointed out that neither party had requested "an instruction out of the restatement."  Acknowledging that "generally, [courts] don't give instructions . . . sua sponte," the trial court told the parties that it had drafted a jury instruction based on the restatement and gave them an opportunity to review the proposed draft.  In response, 712 Mayor Patricia's trial counsel stated, "I think you have to give this

instruction based on the case I read last night. So, I would agree. I'm -- I'm in favor of this instruction."

¶ 36 True, the record also shows that 712 Mayor Patricia later objected to the duty instruction, stating that "just for the record, . . . note [712 Mayor Patricia's] objection to the inclusion of the off-premise-landowner duty instruction . . . based on the restatement." But in doing so, 712 Mayor Patricia didn't argue that the instruction was improper because the court drafted it sua sponte. *See Vikell Invs. Pac., Inc. v. Kip Hampden, Ltd.*, 946 P.2d 589, 596 (Colo. App. 1997) ("A general objection to an instruction is not sufficient to preserve a specific objection for appeal."); *see also Valentine*, 252 P.3d at 1188 n.4. Because 712 Mayor Patricia failed to preserve this argument in the trial court, it is likewise waived, and we decline to address it on the merits. *See Melat, Pressman & Higbie, L.L.P.*, ¶ 18.

### 3. Standard of Care for Disassembling and Removing a Greenhouse

¶ 37 Finally, we're not persuaded by 712 Mayor Patricia's argument that it was entitled to a directed verdict because no reasonable jury would have been able to find that it breached its legal duty of care

21

given that Farinas didn't establish what a reasonable care was in dismantling and removing a greenhouse. It's true that Farinas didn't present specific evidence regarding, in 712 Mayor Patricia's words, "the proper way to disassemble and remove the greenhouse." But 712 Mayor Patricia doesn't provide any compelling argument or authorities indicating why such specific proof was required under the circumstances of this case.

¶ 38    Indeed, there is other evidence in the record from which a reasonable juror could have concluded what the duty of care was and that 712 Mayor Patricia breached it. Aubin Kemp, the owner of LB Distribution, testified that he had dismantled the greenhouse with the help of his three friends. Kemp stated that neither he nor his friends were licensed contractors or had experience with the type of work they did on 712 Mayor Patricia's property. He also testified that the greenhouse panels were secured through an interlock system that was supposed to hold them down if there was any wind and that he detached the panels from that system during the dismantling process. When asked what he did to secure the panels once they were removed from the structure, Kemp testified that he threw unusable panels into 712 Mayor Patricia's dumpster

and put "rocks or something on them . . . because a lot of times if something's even laying on the ground [t]here, the wind can pick it up and throw it around." And he further stated that Timothy Dang, who had brokered the greenhouse transaction on 712 Mayor Patricia's behalf, helped him dispose of those panels.

¶ 39 Viewing this evidence in the light most favorable to Farinas as the nonmoving party, a reasonable jury could conclude that the exercise of reasonable care required better securing the panels after they were removed from the greenhouse. *See Goddard*, ¶ 25. The court therefore didn't err when it denied Mayor Patricia's motion for a directed verdict and submitted the issues of duty and breach to the jury.

## III. Disposition

¶ 40 The judgment is affirmed.

JUDGE HARRIS and JUDGE YUN concur.